**Volker Keith MEINHOLD, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE, et al., Defendants.**

**No. CV 92–6044 TJH (JRx).**

United States District Court,
C.D. California.

Jan. 29, 1993.

Harry G. Melkonian, Christopher L. Rudd, John I. McGuire, White & Case, Los Angeles, CA, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Teree A. Bowers, U.S. Atty., Vincent M. Garvey, David M. Glass, Attys., Dept. of Justice, Washington, DC, for defendants.

AMENDED OPINION

HATTER, District Judge.

BACKGROUND

In 1980, at the age of 17, Volker Keith Meinhold enlisted in the United States Navy. Over the last twelve years, Meinhold has established a reputation for being a dedicated and disciplined sailor. As such, he earned his position as a Naval airborne sonar analyst and instructor. He has consistently received outstanding evaluations and has never been the subject of disciplinary action.

In 1992, Meinhold was discharged from the Navy and deprived of his career after he announced on an ABC television news program that he was gay. Meinhold was discharged not because he engaged in prohibited conduct, but because he labeled himself as gay. Meinhold filed this action in response to his discharge. Previously, this Court issued a preliminary injunction ordering the Navy to reinstate Meinhold pending a final resolution of this case.

The Court, now, decides this case on the merits based on the cross motions for summary judgment. The parties are in agreement on the relevant facts, and the Court finds that there are no genuine issues of material fact to preclude the rendering of a decision based on the law of the land. Fed. R.Civ.P. 56(c). While Meinhold, also, attacks the administrative discharge procedures used by the Navy, the key issue presented to the Court is whether the United States Department of Defense may ban, from the armed forces of the United States, gays and lesbians who do not engage in prohibited conduct.

DISCUSSION

*Exhaustion of Administrative Remedies*

While it is clear to this Court that there were numerous procedural errors committed by the board of Naval officers convened for Meinhold's administrative discharge hearing, it is also undisputed that a new hearing would result in the same decision. Namely, Meinhold would, again, be discharged based on his status as a homo-

sexual. Thus, requiring Meinhold to exhaust his intraservice remedies would be futile. *See, Watkins v. U.S. Army,* 875 F.2d 699, 705 (9th Cir.1989) (*en banc*), *cert. denied,* 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990). Therefore, this Court will proceed to the merits of Meinhold's claims.

*Equal Protection*

■ To survive Meinhold's claim that the Department of Defense's policy banning gays and lesbians based merely on status, and not conduct, violates the Equal Protection clause of the Fifth Amendment, the Department of Defense must establish, through a factual record, that its policy is rationally related to its permissible goals. *Pruitt v. Cheney,* 963 F.2d 1160, 1166–67 (9th Cir.1991), *cert. denied,* — U.S. —, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). In determining whether the policy is rationally related, the Court cannot merely defer to the "military judgment" as the rationale for the policy—the Court must consider the factual basis underlying the "military judgment." *Pruitt,* 963 F.2d at 1166–67.

■ The Navy contends that its ban against gays and lesbians is rationally related to its goals of maintaining discipline, good order and morale; fostering mutual trust and confidence among servicemembers; the need to recruit and retain servicemembers; and maintaining public acceptability of the Navy. Navy Military Personal Manual 3630400(1). Security concerns, once generally raised by supporters of the ban, however, are no longer a rationale, since gays and lesbians are not a security risk to the military, according to former Secretary of Defense Richard Cheney. *Meet the Press* (NBC television broadcast, Dec. 6, 1992).

The factual record placed before the Court by the Department of Defense is sparse. The Navy rests solely on a report produced by the United States General Accounting Office in June of 1992. General Accounting Office, *Defense Force Management: Statistics Related to DoD's Policy on Homosexuality* (1992). However, that report concludes nothing more than what the Department of Justice has already told the Court—the rationale for the policy banning gays and lesbians from the military is "not capable of being determined authoritatively by scientific means or proven studies." *Defense Force Management,* p. 69. The GAO reached the conclusion that the policy is based on "military judgment [which is] inherently subjective in nature [and not susceptible to] scientific or sociological analysis." *Defense Force Management,* p. 56. However, the military has, indeed, obtained scientific and sociological analyses upon which to base its decisions regarding gays and lesbians in the military.

In 1957, the Secretary of the Navy commissioned a report regarding the revision of its policies, procedures and directives dealing with homosexuals. *Report of the Board Appointed to Prepare and Submit Recommendations to the Secretary of the Navy for the Revision of Policies, Procedures and Directives Dealing with Homosexuality* (Mar. 15, 1957) ["Crittenden Report"]. The Crittenden Report stated that there was no "visible supporting data [to support the conclusion that gays and lesbians] cannot acceptably serve in the military." *Crittenden Report,* p. 5. In 1976, the Chief of Naval Personnel stated that "no empirical proof exists at this time [to support the Navy's contention that] homosexuality has an adverse effect upon the completion of the [military] mission." Memorandum from Chief of Naval Personnel to Judge Advocate General (Aug. 2, 1976).

Moreover, in 1988, the Department of Defense commissioned a study of homosexual veterans which concluded that "having a same-gender or an opposite-gender orientation is unrelated to job performance in the same way as being left- or right-handed." Theodore R. Sarbin & Kenneth K. Eoyang, *Nonconforming Sexual Orientation and Military Suitability,* p. 33 (1988). In 1989, another Department of Defense-commissioned study investigated the suitability of gay men and lesbians for military service, and found that "homosexuals more closely resemble those who successfully adjust to military life than those who are

discharged for unsuitability ... [and that] homosexuals show pre-service suitability-related adjustment that is as good or better than the average heterosexual." Michael A. McDaniel, *Preservice Adjustment of Homosexual and Heterosexual Military Accessions*, p. 19 (1989).

Further, Vice Admiral Joseph S. Donnell, the Commander of the Surface Atlantic Fleet has stated that "[e]xperience has ... shown that the stereotypical female homosexual in the Navy is hardworking, career-orientated, willing to put in long hours on the job and among the command's top professionals." Administrative Message from Commander, Naval Surface Fleet, Atlantic, to the Naval Surface Fleet, Atlantic (July 2, 1990).

Additionally, of all the countries in the North Atlantic Treaty Organization ["NATO"], only the United States and Great Britain ban gays and lesbians from their armed forces. On October 27, 1992, Canada's military leaders rescinded Canada's policy of banning gays and lesbians from the Canadian Forces, albeit as a result of a court order. In explaining why the ban was rescinded, General A.J.G.D. de Chastelain, Canada's Chief of the Defense Staff, reported that the military leadership was "satisfied that the policy no longer serves the best interests of the CF and its members." *National Defense News Release* (Oct. 27, 1992). On November 23, 1992, Australia lifted its ban against gays and lesbians in the Australian Defence Force. Prime Minister P.J. Keating, *Australian Defence Force Policy on Homosexuals* (Nov. 23, 1992). In support of lifting the ban, Australia's Prime Minister stated that "the decision will not have the adverse effect on morale and cohesion predicted by some." *Id.*

Finally, Dr. Lawrence J. Korb, the former Assistant Secretary of Defense who was responsible for approving and implementing the present policy banning gays and lesbians, has declared "that there is no longer any justification for the armed services' current ban on homosexuals serving in the military ... [that] each of the justifications offered in support of this policy is without factual foundation ... [and, therefore,] there is no longer any rational basis [for it]." Meinhold's Exhibit 12, p. 874, ¶¶ 4 & 7.

As the Ninth Circuit has held, so, too, does this Court hold that deference to "military judgment," in the absence of a factual basis for such judgment, would result in the denial of judicial review. *Pruitt*, 963 F.2d at 1166–67.

Gays and lesbians have served, and continue to serve, the United States military with honor, pride, dignity and loyalty. The Department of Defense's justifications for its policy banning gays and lesbians from military service are based on cultural myths and false stereotypes. These justifications are baseless and very similar to the reasons offered to keep the military racially segregated in the 1940's.*

Gays and lesbians should not be banned from serving our country in the absence of conduct which interferes with the military mission. Hopefully, our military leaders will come to realize that "[w]e are not an assimilative, homogeneous society, but a facilitative, pluralistic one, in which we must be willing to abide someone else's unfamiliar or even repellant practice because the same tolerant impulse protects our own idiosyncracies." *Michael H. v. Gerald D.*, 491 U.S. 110, 141, 109 S.Ct. 2333, 2351, 105 L.Ed.2d 91, 117 (1989) (Brennan, J., dissenting).

Therefore, Meinhold's motion for summary judgment is granted, and the Department of Defense's motion for summary judgment is denied. The Department of Defense is permanently enjoined from discharging or denying enlistment to any person based on sexual orientation in the absence of sexual conduct which interferes with the military mission of the armed forces of the United States. Meinhold's

* For a particularly insightful and thorough analysis of the Department of Defense's ban against gays and lesbians, see Kurt D. Hermansen, Comment, *Analyzing the Military's Justification for its Exclusionary Policy: Fifty Years Without a Rational Basis*, 26 Loy.L.A.L.Rev. 151 (1992).

discharge from the United States Navy is rescinded.

It is so Ordered.