**LTJG Richard Dirk SELLAND, Plaintiff,**

v.

**Les ASPIN, et al., Defendants.**

**Civ. A. No. 93–1924–LFO.**

United States District Court,
District of Columbia.

Sept. 28, 1993.

As Amended Sept. 29, 1993.

Antonia B. Ianniello, Hank Hockeimer, Steptoe & Johnson, Washington, DC, for plaintiff.

Vincent M. Garvey, Michael J. Haungs, Dept. of Justice, Civil Div., Washington, DC (Lt. Cdr. Mark D. Lawton, Dept. of the Navy, Office of the JAG, of counsel), for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff, Lieutenant (J.G.) Richard D. Selland, is before the Court on his motion for a preliminary injunction that would bar the Secretaries of Defense and Navy from separating him from the Navy on the basis of homosexual orientation.

### I.

The essential undisputed facts are that the Chief of Naval Personnel has reported to the Secretary of the Navy that

[plaintiff] is a regular Supply Corps officer with two years commissioned service ... [who] has been recommended for administrative separation with an Honorable discharge.

Administrative Record (A.R.) at 4. Noting plaintiff's two objections to his separation, the Chief advised the Secretary that (1) plaintiff had appropriate notice that "he was being considered for administrative separation based on homosexuality as evidenced by his admission that he is a homosexual," and (2) "[n]either [Defense Department] guidelines nor policy concerning the retention of homosexual [sic] contains any ... provision [that] the Navy must allege misconduct, in addition to status, in order to separate an officer based on his homosexuality." In conclusion the Chief recommended that the Secretary "separate [plaintiff] from the Naval Service with an Honorable Discharge.... The separation code will be GRB (homosexuality admission)." *Id.*

On May 21, 1993, an Acting Secretary of the Navy advised an Assistant Secretary of Defense that the Secretary of the Navy had approved an honorable discharge but had not yet directed separation and recommended that plaintiff's case be referred to the Attorney General for determination of whether or not the discharge should be suspended.

On July 2, 1993, the General Counsel of the Defense Department advised the Attorney General that plaintiff's case and one other

have been processed in accordance with Department of Defense policies and procedures governing administrative separation of military personnel for homosexuality. *They are based only on acknowledged homosexual 'status,' as opposed to homosexual conduct....* The Separation Authority has determined that separation is warranted under established policies and procedures.

A.R. at 2 (emphasis supplied). The General Counsel further reminded the Attorney General of her authority to direct that plaintiff's discharge be suspended. If she directed suspension, plaintiff would be "separated from active duty and placed in the standby reserve" with the option to return to active duty upon request should the current policy be changed. *Id.* Those individuals whose cases are not suspended would be discharged.

On August 9, 1993, the Associate Attorney General advised the General Counsel that the Attorney General had delegated to him her authority to

suspend final discharges in 'acknowledged homosexual status' cases given to the Attorney General by the President in his January 29, 1993 directive establishing an

interim policy regarding homosexuals in the military. A.R. at 1. The Associate Attorney General reminded the General Counsel that, on July 19, 1993, the President "announced a new homosexual policy for the military and . . . the Secretary of Defense directed that the interim policy and . . . procedures remain in effect until October 1, 1993." *Id.* He concluded that "the discharge is hereby suspended *until* the President's policy on homosexuals in the military . . . becomes effective." *Id.* (emphasis added). That date is October 1, 1993. Thus, for ought that appears, unless restrained the defendants will automatically discharge plaintiff on, or soon after, that date, without any further administrative consideration of his case.

Plaintiff appears to be in a situation resembling that of a sparrow caught in a badminton game. Despite taunts from shipmates about their belief that he was homosexual, he creditably performed his duties as the supply officer on a nuclear submarine. As the taunts escalated when homosexuals in the armed services surfaced as an issue in the 1992 presidential campaign, plaintiff confided in his Chaplain about the discomfort the taunts were causing him. On the day after President Clinton's inauguration, apparently relying on the President's public statements about homosexuals in the military, plaintiff and the Chaplain met privately with plaintiff's commanding officer, apparently to ask him to admonish the crew about taunting plaintiff. Instead, when the plaintiff admitted that "he was homosexual" (A.R. at 4), the commanding officer removed him from the ship forthwith.[1] Since then he has served creditably as a supply officer in a shore billet.

Separation from active duty would end plaintiff's pay, allowances, and related privileges. Moreover, one may reasonably infer from the cabinet-level correspondence in the administrative record that nothing but a few hours stands in the way of his final discharge from the Navy, complete with the unhelpful and, to many, ignominious, notation on an otherwise honorable discharge: "GRB (homosexuality admission)."[2] A.R. at 5.

All of the foregoing is occurring or imminent without any apparent consideration or finding contemplated by Naval Regulations as to whether there are (or are not) "particular circumstances" that justify plaintiff's retention at some billet in the Navy despite his admission of homosexuality. SECNAVINST 1920.6A at 1(b)3(a)(4) (Encl. 3); *see Matlovich v. Secretary of the Air Force*, 591 F.2d 852, 857 (D.C.Cir.1978).

Most important, the separation and, as of October 1, 1993, discharge remain imminent despite the following order of the United States District Court for the Central District of California:

> [T]he Department of Defense is permanently enjoined from discharging or denying enlistment to any person based on sexual orientation in the absence of sexual conduct which interferes with the military mission of the armed forces of the United States.

*Meinhold v. United States Department of Defense*, 808 F.Supp. 1455, 1458 (C.D.Cal. 1993), *stay denied,* No. CV–92–6044, 1993 WL 195368 (9th Cir. Mar. 5, 1993).

## II.

In order to obtain a preliminary injunction a movant must establish (1) a substantial likelihood of success on the merits, (2) irreparable injury, (3) relatively less injury to defendants, and (4) promotion of, or at least no detriment to, the public interest. These burdens on a plaintiff seeking an injunction against the military are heightened by the deference properly owed to military judgment by the judiciary. On the other hand, an injunction to maintain the *status*

---

1. Defendants could cite this incident to show the burden that would be placed on commanders if they were required to police this kind of tension between homosexuals and others. But, at the merits stage, this burden must be compared, in terms of fact and law, with that borne by commanders after the armed forces included blacks and, more recently, women, in their ranks.

2. Query whether the notation is intentionally unhelpful, whether it would serve any useful purpose, and whether it would comport with the spirit of the "don't ask, don't tell" policy.

*quo* is more accessible than a mandatory injunction that would alter it. Moreover, it is appropriate to consider these four factors in relation to one another so that a stronger showing of one factor will permit a weaker showing on the other factors.[3]

■ Here the probability of success is great. Defendants are under an injunction by a federal judge (which has survived appellate review on two stay motions) not to discharge any person from the armed forces solely because of his/her status as a homosexual. Cabinet-level documents make it clear that plaintiff is threatened with imminent discharge as of October 1. Our Court of Appeals has established in no uncertain terms the duty of a district court to enforce orders of the Court of Appeals.[4] The same principle governs a complaint alleging a violation of a viable order of another federal district court that, on its face, applies nationwide to cabinet officers of the national government.

The likelihood of plaintiff's success is further enhanced by the Supreme Court decision that struck down a California statute that the court construed as making it a crime to be a drug addict—even absent any allegation that the addict sold or used illegal drugs. *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Of course, *Robinson* was a criminal case, which this is not, and a different standard applies to the military in criminal as well as civil cases. Nevertheless, the Supreme Court may well invoke the *Robinson* precedent to condemn inferences of conduct from an unpopular condition (if homosexuality is proved to be a condition) as distinguished from proven illegal acts or attempts to commit them. This result is likely to follow whether the defendants' actions and threatened actions are subject to strict scrutiny[5] or are tested for a rational basis.[6]

Defendants argue that it is reasonable to infer that a homosexual has committed or is likely to commit homosexual acts. This argument must fail for two reasons: (1) the General Counsel explicitly renounced conduct as a ground for separation; and (2) the *Meinhold* Court required not only a *finding* of homosexual conduct; it further ordered that a discharge can survive that injunction, at a minimum, if it is based on a finding that the *conduct* interferes with the military mission of the armed forces of the United States. That is presently, if only temporarily, the law of the land on this subject. Therefore, plaintiff is likely to prevail because defendants have made no finding in compliance with the *Meinhold* requirements.

In reaching these conclusions, I have carefully considered the relevant precedents in this circuit. The D.C. Circuit held in *Dronenburg v. Zech*, 741 F.2d 1388, 1397–98 (D.C.Cir.1984), a case involving sexual misconduct by a homosexual soldier, that the Constitution did not bar the Navy's policy of mandatory discharge for actual homosexual conduct. Here, however, the adverse action is "based only on acknowledged homosexual 'status,' as opposed to homosexual conduct." A.R. at 2. Moreover, our Court of Appeals has reserved judgment as to whether the Central Intelligence Agency may discharge an individual because of sexual orientation, as distinguished from conduct. *Doe v. Casey*, 796 F.2d 1508, 1522 (D.C.Cir.1986), *modified sub nom. Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988).

At the district court level, my colleague Judge Gasch approved a Navy discharge based solely on sexual orientation. *Steffan v. Cheney*, 780 F.Supp. 1 (D.D.C.1991), appeal pending. However, he based his decision in part on health considerations, a ground not urged by the government here. In any event, despite my very great respect for Judge Gasch, I am not persuaded that the

3. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir. 1973).

4. *See International Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C.Cir. 1984).

5. *See FCC v. Beach Communications, Inc.*, — U.S. —, —, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 445, 105 S.Ct. 3249, 3257, 87 L.Ed.2d 313 (1985).

6. *See Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254.

other grounds for his ruling are likely to, or should, control in the unique circumstances at issue here.

The defendants contend nevertheless that plaintiff is not likely to succeed on the merits because their action is not final and plaintiff has not exhausted his administrative remedy. But the remedy they proffer would be before the Board for the Correction of Naval Records, which can consider whether plaintiff's discharge as a homosexual was correct after the discharge. In the circumstances here that is not an adequate remedy, exhaustion of which would be required before plaintiff's claim could be addressed on the merits.

The plaintiff's claim for irreparable injury if he were merely separated from active duty and placed in the standby reserve would be problematic were it not for the Certificate of Release or Discharge From Active Duty (DD Form 214). True, the separation primarily threatens pay and allowances, which can be compensated later, and emotional distress, which may not be compensable or actionable. However, the Certificate, complete with signatures of plaintiff and a Navy Personnel Officer, states: "(23) Type of Separation—Release from Active Duty" and "(28) Narrative Transfer to Inactive–Involuntary Transfer to Inactive Reserve (Homosexuality-admission)." The document states on its face: "This is an Important Record. Safeguard it." It is. And publication of it threatens irreparable injury. Moreover, the Associate Attorney General's letter makes it more likely than not likely that on October 1, 1993, or shortly thereafter, the other shoe will automatically drop, and plaintiff will not only lose his pay, allowances, and his well-performed job, but will be finally discharged with the modern counterpart of a "bar sinister" etched upon his record: "GRB (homosexuality admission)."

Defendants have demonstrated no equity against the maintenance of this single plain-tiff in *status quo* pending a final judgment because of its possible deleterious effect upon the Navy's mission. Moreover, the equity of any claim of injury that defendants might have is trumped by the fact that they are perilously close to being in contempt of the *Meinhold* order.[7] There is also an intangible, but meaningful, equity in the fact that plaintiff made the statement about his homosexuality, not for broadcasting on television, but in the company of his Chaplain to his Commanding Officer in his stateroom apparently to gain his intervention with respect to taunts he was receiving, in part because of public statements by the President of the United States. Indeed, he appears to have felt free to make his admission in reliance on those presidential statements. Response of LTJG Richard Selland to the Notice of Administrative Separation (A.R. at 9). Thus, the equities favoring plaintiff outweigh any demonstrated injury or threatened injury to the Navy.

The public interest in this matter is difficult to quantify. Obviously, the public interest in the Navy's mission is paramount, and could be (indeed in the proceedings on the merits may well be) decisive. But this is an application to maintain the *status quo* temporarily pending a final resolution of the matter. An accompanying Order will grant the motion, tailor the *Meinhold* order to the posture of this case, and schedule expedited administration of it on the merits.

## ORDER

On the basis of the findings and for reasons stated in the accompanying Memorandum, it is this 27th day of September, 1993, hereby

ORDERED: that, pending a final judgment or other order of the Court, defendants, and all persons acting in concert with them, are ENJOINED from separating plaintiff from active duty, placing him on

---

7. Defendants would distinguish the *Meinhold* order because, in denying a stay of it, the Ninth Circuit emphasized that the plaintiff in that case was not being discharged, but only separated from active duty and placed on reserve. But that distinction does not reach this case where, for ought that appears, discharge can be days or hours away. In any event, a *Meinhold* court order entered September 22, 1993, is unequivocal. It directs defendants to show cause why they should not be cited for contempt "for continuing to enforce the Department of Defense's policy regarding gays and lesbians despite this Court's determination that the policy violates the United States Constitution...."

active reserve, or discharging plaintiff from the Navy based on sexual orientation in the absence of sexual conduct which interferes with the military mission of the United States Navy; and it is further

ORDERED: that on or before October 8, 1993, the parties shall file a proposed schedule for the disposition, or trial, of this case on the merits.