**Justin C. ELZIE, Plaintiff,**

v.

**Les ASPIN, et al., Defendant.**

**Civ. A. No. 93–1853.**

United States District Court, District of Columbia.

Nov. 10, 1993.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on plaintiff's Application for Preliminary Injunction. Plaintiff, Justin Elzie, a sergeant in the United States Marine Corps ("Marine Corps"), brings this action against defendants Les Aspin, Secretary of Defense, John Dalton, Secretary of the Navy, and Carl Mundy, Jr., Commandant of the Marine Corps, seeking declaratory and injunctive relief charging that the Marine Corps improperly and unlawfully recommended him for discharge from active duty and barred him from a retirement benefits program. Plaintiff alleges that the Marine Corps took such action against him based solely on his public announcement that he is a homosexual. Defendants do not dispute that their action was based solely on plaintiff's public declaration of his sexual orientation. They assert, however, that the Marine Corps was authorized to take such action by long-standing military policy that permits service members to be

separated from the armed forces on the sole ground of "homosexual admissions."

In his Application for Preliminary Injunction, plaintiff asks this Court to 1) restore him to active duty in the Marine Corps; 2) enjoin defendants from discharging him from the Marine Corps during the pendency of this action on the basis of his status as a homosexual; 3) restore him to full participation in the Voluntary Separation Incentive and Special Separation Benefit ("VSI/SSB") program. It is plaintiff's position that if he succeeds on the merits, absent an injunction he will suffer irreparable injury because he will have been discharged from the Marine Corps.

## STATEMENT OF FACTS

Plaintiff is an eleven year veteran of the Marine Corps. During his rise through the ranks from private to sergeant, he distinguished himself at every step. His service record is replete with commendations and awards and decorations. In 1982 he received a meritorious promotion to Private First Class. In 1984 he received another meritorious promotion to Corporal. In 1985 he received a citation for "outstanding service" from his commanding officer. In 1989 plaintiff was nominated for and selected "Marine of the Year" for his battalion and for his group. He successfully completed the training program at the selective Marine Corps embassy school in Quantico, Virginia and was subsequently charged with the security of some of the nation's senior government officials. He consistently received outstanding fitness reports.

In 1991, Congress established the Voluntary Separation Incentive and Special Separation Benefit ("VSI/SSB") program designed to reduce the size of the armed forces in keeping with a perceived diminished threat to United States' interests posed by the "new world order." The VSI/SSB program provides, to those members of the armed forces who qualify, incentive payments and medical and veterans benefits as inducements to elect early retirement. 10 U.S.C. §§ 1174(a), 1175. Among the criteria dis-

qualifying Marines' participation in the program for fiscal year 1993 is "pending administrative action which could culminate in discharge proceedings." All Marines Bulletin 349/92, Para. 5.H(2).

In 1992, plaintiff applied for acceptance into the VSI/SSB program planning to retire from the Marine Corps to pursue other career goals. At the time he applied, his service record made him eligible for the program and he was accepted into the program. On January 28, 1993, a United States district court in California enjoined the Department of Defense from "discharging or denying enlistment to any person based on sexual orientation in the absence of sexual conduct which interferes with the military mission of the armed forces." *Meinhold v. United States Dept. of Defense,* 808 F.Supp. 1455, 1458 (1993).[1]

The day after that injunction issued, the President of the United States announced in a press conference that he opposed the military's policy on homosexual service and announced his determination to lift the ban and thereby end the policy of excluding or discharging service members "solely on the basis of sexual orientation." *The President's News Conference,* 29 Weekly Comp.Pres.Doc. 108, 109 (Jan. 29, 1993). The President stated that the Department of Defense would conduct a review of the then-existing policy and draft an Executive Order reflecting the product of that review by July 15, 1993. The President also announced that while the Department of Defense reviewed the policy on homosexuals, an interim policy would obtain.

Under the interim policy, the military was barred from questioning prospective service members about their sexual orientation on induction applications. In addition, the interim policy allowed the military to process service members for separation pursuant to the existing policy, however, where the service member was subject to discharge solely because of his/her status as a homosexual the Attorney General was authorized to suspend final discharge and transfer the member to

---

1. The Supreme Court has since stayed the *Meinhold* injunction as it applies to persons other than the named plaintiff pending disposition of

the appeal in the Ninth Circuit. *Department of Defense v. Meinhold,* —— U.S. ——, 114 S.Ct. 374, 126 L.Ed.2d 324 (1993).

standby reserve pending completion of the policy review.

On the evening of January 29, 1993, the ABC television program World News Tonight aired an interview in which plaintiff declared that he is a homosexual. Plaintiff asserts he publicly revealed his sexual orientation in reliance on the President's announcement and the *Meinhold* decision. He subsequently made several public statements affirming his sexual orientation.

On February 5, 1993, plaintiff was informed that he had been accepted into the VSI/SSB program. On February 10, 1993, plaintiff was told that because of his statements regarding his sexual orientation the Marine Corps planned to remove him from the VSI/SSB program. The Marine Corps gave plaintiff the option to agreeing to a voluntary separation, in which case he would be temporarily reaccepted into the VSI/SSB program with his benefits held in abeyance pending the final Executive Order with respect to the military ban. If the new policy allowed plaintiff to continue service in the Marine Corps, he would be given full VSI/SSB benefits. If he was not eligible for continued service under the new policy he would be denied VSI/SSB benefits. The Marine Corps advised plaintiff that if he refused a voluntary separation he would be involuntarily separated pursuant to Marine Corps regulations that authorize discharge on the grounds of homosexual "admissions." Plaintiff declined a voluntary separation with less than full VSI/SSB benefits and the Marine Corps began administrative discharge proceedings.[2]

On March 31, 1993, an Administrative Discharge Board recommended that plaintiff be discharged pursuant to MarCorSepMan ¶ 6207.3b(2) which provides for discharge when a Marine "admits to being a homosexual or bisexual, unless there is a further finding that the member is not homosexual or bisexual." The discharge proceeding was based solely on plaintiff's statements regarding his sexual orientation. The Marine Corps argued that the exclusionary regulations were not limited to conduct, thus admissions of homosexual status would be sufficient grounds for discharge. Plaintiff's assertion that the regulations required a finding that he had a propensity to engage in homosexual conduct was rejected. The Administrative Discharge Board recommended discharge on the sole basis of plaintiff's "public admissions and numerous media statements."

On July 19, 1993, the President announced that the military's policy concerning homosexual service was being revised. The new policy, which took effect on October 1, 1993, removes homosexual orientation, standing alone, as a sufficient basis for discharge. In addition to an admission of homosexual orientation, there must be a finding that the service member has a propensity to engage in homosexual conduct. A service member's homosexual admission creates a rebuttable presumption of such propensity, which casts the burden on the service member to rebut the presumption. Separation is warranted under the new policy only when the service member fails to present evidence rebutting the presumption of propensity.

Plaintiff was officially removed from active duty on September 1, 1993. Defendants adopted the Administrative Discharge Board's recommendation of discharge and placed plaintiff on unpaid standby reserve. Accordingly, plaintiff's pay was terminated and he was given one half of the ordinary separation pay.

As a result of the *Meinhold* decision the parties agreed that plaintiff be returned to active duty and remain there pending resolu-

---

**2.** The Marine Corps' position on sexual orientation is found in Department of Defense ("DOD") Directive 1332.14 (Jan. 28, 1982), *published at* 32 C.F.R. part 41, app. A (1992). The policy provides for the separation of enlisted persons who have been found to have "engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts," or who have "stated that he or she is a homosexual." Marine Corps' regulations require the initiation of discharge proceedings where there is "probable cause" that a Marine has "engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts," or has "admitted to being a homosexual or bisexual, unless there is a further finding that the member is not homosexual or bisexual." Marine Corps Separation and Retirement Manual ("MarCorSepMan"), ¶ 6207.-3(b).

tion of this litigation. This agreement expired on October 29, 1993, when the Supreme Court limited the injunction in *Meinhold* solely to the named plaintiff. On November 2, 1993, this Court issued a temporary restraining order maintaining the *status quo* while it considered the issues presented in this case. The order restrained defendants for 10 days from taking any adverse action against plaintiff based solely on his status as a homosexual.

ANALYSIS

A party moving for a preliminary injunction must demonstrate: 1) a substantial likelihood of success on the merits, 2) irreparable injury absent an injunction, 3) relatively less injury to the non-moving party, and 4) that the injunction will promote the public interest. *See Washington Metro. Area Transit Auth. v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C.Cir.1977). For the reasons set forth below, this Court finds that plaintiff is entitled to the preliminary injunction he seeks.

A. Likelihood of Success on the Merits.

Plaintiff has demonstrated probable success on the merits with respect to his removal from active duty. The policy applied to plaintiff must be reviewed under the rational basis test. Under the rational basis test, a government policy fails if it does not serve a legitimate governmental purpose or deprives an individual of his constitutional or legal rights.

The cornerstone of the armed forces' homosexual ban is that homosexual's serving in the armed forces impair the ability of the military to perform its mission. According to the Marine Corps policy statement, homosexual Marines adversely affect the service's ability to "maintain discipline, good order, and morale; to foster mutual trust and confidence among Marines; to ensure the integrity of the system of rank and command; to facilitate assignment and worldwide deployment of service members who frequently must live and work under close conditions affording minimal privacy; to recruit and retain members of the Marine Corps; to maintain public acceptance of military service; and to prevent breaches of security." MarCorSepMan ¶ 6207.1

Defendants state that the courts should defer to the "considered professional judgment" of military officials as to who is fit to serve their country in the armed forces. *Goldman v. Weinberger,* 475 U.S. 503, 509, 106 S.Ct. 1310, 1314, 89 L.Ed.2d 478 (1986). Defendants take the position that under the policy at issue here, " 'appropriate military officials' concluded, as a matter of 'considered professional judgment,' ... that 'the presence of persons who engage in homosexual conduct or who, by their statements, demonstrate a propensity to engage in homosexual conduct, seriously impairs the accomplishment of the military mission.' " Defendants' Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction at 25, quoting *Goldman supra* at 509, 106 S.Ct. at 1314 and DOD Directive 1332. They also cite this circuit's holding in *Dronenburg v. Zech,* 741 F.2d 1388 (D.C.Cir.1984) to support their assertion that the Marine Corps' discharge of plaintiff passes constitutional muster.

This court is unpersuaded by defendants' arguments. First the *Dronenburg* case involved sexual misconduct by a homosexual soldier. The instant case is devoid of any such allegation. This case involves adverse action against plaintiff based solely on his homosexual status. Recently, Judge Oberdorfer had the opportunity to pass on the same issue presented here, namely, whether a serviceman's homosexual status by itself can justify his discharge from active duty. *See Selland v. Aspin,* 832 F.Supp. 12 (D.D.C. 1993). In that case Judge Oberdorfer granted a preliminary injunction to a homosexual sailor barring the United States Navy from discharging him solely on the basis of his sexual orientation. In so doing, Judge Oberdorfer distinguished between homosexual orientation and homosexual conduct in reaching the conclusion that the plaintiff, Richard Selland, would likely prevail on the merits. Neither the Court of Appeals nor the Supreme Court has yet ruled on this issue.

Defendants present no evidence that homosexual status alone adversely affects the accomplishment of the military mission. Ex-

amination of the record in this case reveals no basis, other than the Marine Corps' policy statement that supports the discharge of a service member solely because of that member's status as a homosexual. It is well established that courts cannot give "private biases" legal effect. *Palmore v. Sidoti*, 466 U.S. 429, 433, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421 (1984). At this stage of the proceedings, plaintiff presents a strong case that he will probably succeed in establishing that the policy banning homosexuals from the military solely on the basis of status serves no legitimate governmental purpose.

**B. Irreparable Injury.**

The Court finds that plaintiff will suffer irreparable injury if the Marine Corps is allowed to involuntarily discharge him and deprive him of his rights as a Marine. First, plaintiff will suffer the loss of constitutional rights for which money damages are inadequate, namely, the right to equal protection under the Fourteenth Amendment. Defendants' actions also implicate free speech concerns under the First Amendment. Second, plaintiff stands to lose his medical benefits, his opportunity to participate in the VSI/SSB program, and a portion of his retirement pay. Third, plaintiff faces the stigma of being removed from active duty as a sergeant in the Marine Corps—a position which he has performed in a sterling fashion for eleven years—and labeled as unfit for service solely on the basis of his sexual orientation, a criterion which has no bearing on his ability to perform his job. That plaintiff has performed in exemplary fashion for eleven years clearly negates defendants' assertion that homosexuality is incompatible with being a good Marine. Plaintiff did not become any less of a Marine on the day he announced his sexual orientation.

**C. Relatively Less Injury to Defendants.**

Granting a preliminary injunction keeping plaintiff on active duty and maintaining his eligibility for the VSI/SSB program pending the final outcome of this case will result in no discernible injury to defendants. Plaintiff served in the Marine Corps for eleven years with distinction. This Court sees no injury

to defendants by having the services of a "model Marine" for the duration of this litigation. What is more, plaintiff is ready and willing to leave the Marine Corps voluntarily if he is permitted to participate in the VSI/SSB program. This Court is at a complete loss why the Marine Corps would not accede to this reasonable request particularly since in every respect plaintiff is entitled to be placed in the program. Indeed, prior to acknowledgement of his homosexuality he had been accepted into the VSI/SSB program. It seems to this Court that the defendants want to go beyond merely enforcing their policy on homosexuality and actually want to punish plaintiff because of his statements that he is a homosexual. This the law does not allow.

**D. Injunction Would Promote the Public Interest.**

The public's interest in the efficient operation of the armed forces is clear. The Court does not believe that banning homosexuals from the armed forces on the basis of status alone will adversely affect the military's mission. The issue in this case is status alone. Conduct is not involved and there is nothing in this Court's decision which would prevent the armed forces from enforcing conduct codes.

The same arguments made today concerning homosexuals were made in the past when efforts were first made to knock down sexual and racial barriers in the armed forces. This nation was told that we could not have effective armed services unless we maintained racially and sexually segregated armed forces. We now know such statements were grossly in error. Many say this same misconception applies to the homosexual issue. The ability of homosexuals to perform in all phases of the workplace, including the armed services, has been proven beyond any question. There is simply no correlation between an individual's sexual orientation and his or her intellectual or physical capacity to perform in the workplace.

Indeed, in considering the public interest, it might well be argued that to deprive our armed forces of the intellectual and physical prowess of some extraordinarily talented in-

dividuals strictly because of their sexual orientation would be doing a great disservice to this nation. If the Court accepts defendants' position, it would create an incongruity in that the policy would preclude homosexuals from serving in the armed forces but would not extend to the Commander-in-Chief.

For the above reasons the Court enters a preliminary injunction barring defendants from taking any adverse action against plaintiff solely on the basis of his status as a homosexual. So long as plaintiff discharges his duties and responsibilities as a United States Marine Corps sergeant he shall be allowed to remain on active duty pending this Court's determination on the merits.

CONCLUSION

Because the Court finds that plaintiff has shown a likelihood of success on the merits and the balancing of the equities favors plaintiff, plaintiff's Application for Preliminary Injunction will be granted.

### ORDER

On the basis of the findings and reasons stated in the accompanying Memorandum Opinion, it is this 10th day of November, 1993 hereby

ORDERED: that for the duration of this litigation defendants, Les Aspin, Secretary of Defense, John Dalton, Secretary of the Navy, and General Carl Mundy, Jr., Commandant of the Marine Corps, their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, are enjoined from taking any adverse action against plaintiff, separating plaintiff from active duty, placing him on standby reserve, discharging him from the Marine Corps or denying him participation in the VSI/SSB program on the sole basis of his sexual orientation.