**Justin C. ELZIE, Plaintiff,**

v.

**Les ASPIN, et al., Defendants.**

Civ. A. No. 93–1853.

United States District Court,
District of Columbia.

Aug. 14, 1995.

David B. Isbell, Lanny A. Breuer, Allan Baron Moore, Christopher N. Sipes, Covington & Burling, Washington, DC, for plaintiff.

Vincent Morgan Garvey, U.S. Department of Justice, Civil Division, Washington, DC, Michael J. Haungs, U.S. Department of Justice, Federal Programs Branch, Washington, DC, for defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on cross-motions for summary judgment. Plaintiff, a sergeant in the United States Marine Corps, filed an action for declaratory and injunctive relief against officers of the United States government for unlawfully discharging him from active duty in the Marine Corps and for unlawfully barring him from a retirement benefits program on the basis of his public acknowledgment that he was a homosexual. The military does not dispute that it took such actions, pursuant to its then-existing policy, based solely on Plaintiff's public acknowledgment of his homosexual status.

Plaintiff contends that the military's actions under its then-existing policy violated his rights to due process under the Fifth Amendment, his rights to equal protection under the Fifth Amendment, his rights of free speech under the First Amendment, and his right to privacy under the First, Fifth and Ninth Amendments. Plaintiff also claims that the military's actions were a violation of the Administrative Procedures Act. In addition to claiming that he was denied equal protection of the laws on the basis of his homosexual status, he also claims that the military's actions constitute gender discrimination.

By Order dated November 10, 1993, this Court issued a preliminary injunction, enjoining the military during the pendency of this litigation from taking any adverse action against the Plaintiff, separating him from active duty, placing him on standby reserve, discharging him from the Marine Corps, and denying him participation in the retirement benefits program.

## BACKGROUND

Sergeant Elzie, a professed homosexual, is the epitome of the hardworking, dedicated,

disciplined, capable and professional Marine. He enlisted in the Marine Corps in November of 1982 at the age of 20 and for the past 13 years has served his country in the highest traditions of excellence, receiving promotions and commendations and becoming a leader within the Marine Corps. Within his first year, he received a meritorious promotion to the rank of Private First Class. By 1984, he received a second meritorious promotion to the rank of Corporal.

Sergeant Elzie has been described by the same military which seeks to discharge him as "outstanding," "[l]oyal and reliable," and as "[a]n effective asset to have" and as a person whom the "Marine Corps should strive to retain."[1] When he received a citation for outstanding service in 1985, Lieutenant Colonel Chevalier stated:

Your competence and initiative in seeking and accepting additional responsibilities far exceeded that of your contemporaries. You have consistently set the example as a Marine NCO [noncommissioned officer] by your unselfish attitude, dedication, and performance as a leader of Marines. Your performance is in keeping with the highest tradition of the United States Marine Corps.

In 1989, he was selected "Marine of the Year" for the Third Medical Battalion and the Third Force Service Support Group. During the 1990 Helsinki Summit between President Bush and President Gorbachev, he was entrusted with the security of senior government officials, including then-Secretary of State James Baker, then-National Security Advisor Brent Scowcroft, and then-White House Chief of Staff John Sununu. In 1991, Colonel Harkins observed that Sgt. Elzie has "unlimited growth potential and is highly qualified for promotion."

Given his exemplary service, Sgt. Elzie was eligible for the Voluntary Separation Incentive and Special Separation Benefit ("VSI/SSB") program, a retirement program which was offered by Congress in an effort to reduce the armed forces. 10 U.S.C. §§ 1174a, 1175. In December of 1992, he applied for this program in order to pursue a college education. Had all gone according to plan, he would have received the retirement benefits and been separated from active duty by the end of April, 1993.

Not all went as planned. On January 29, 1993, Sgt. Elzie, after the President announced that he disagreed with the military's ban on homosexuals, stated publicly that he was a homosexual. Sgt. Elzie's "unlimited growth potential" and "positive future [in the military]"[2] were cut short by this public acknowledgment. On March 21, 1993, the Marine Corps convened an Administrative Discharge Board and recommended Sgt. Elzie's discharge based solely on his admission of homosexual status. PI Exhibit A at P00096, P00099, P00100.[3] On September 1, 1993, Sgt. Elzie was officially discharged. This suit followed, challenging the legality and constitutionality of the military's then-existing policy on homosexuals enumerated in Department of Defense Directive 1332.14 (January 28, 1992), *published at* 32 C.F.R. part 41, app. A (1992) (superseded).

Based on the *Meinhold* injunction, which permanently enjoined the military from discharging service members on the basis of statements that they were homosexual, the military voluntarily reinstated Sgt. Elzie on October 19, 1993. *Meinhold v. United States Department of Defense,* 808 F.Supp. 1455 (C.D.Cal.1993), *aff'd in part and rev'd in part,* 34 F.3d 1469 (9th Cir.1994). When the Supreme Court stayed the injunction as to plaintiffs not named in the *Meinhold* case, the military promptly reinstated its discharge decision. *United States Department of Defense v. Meinhold,* —— U.S. ——, 114 S.Ct. 374, 126 L.Ed.2d 324 (1993). On November 10, 1993, this Court issued its preliminary injunction enjoining the discharge.

During his service in the Marine Corps since his acknowledgment of his homosexual

---

1. Plaintiff was described in this manner in his 1988 fitness report written by Major Mangin, his reviewing officer.

2. Ambassador John Giffen Weinman predicted that Sgt. Elzie had "a very positive future ahead" in September of 1990 after Sgt. Elzie completed his embassy duty in Helsinki.

3. "PI" refers to the preliminary injunction exhibits.

status, Plaintiff has continued to demonstrate the qualities which resulted in his being named "Marine of the Year." In March of 1994, he was awarded a Certificate of Good Conduct and as recently as March of 1995, he was "highly recommended" for a promotion. His superior officer, Lieutenant Toomey, concluded that Sgt. Elzie had "demonstrated superior motivation, dedication to duty and outstanding professional and military performance."

This case now comes before the Court on cross-motions for summary judgment. Despite his exemplary record, the military remains committed to denying Sgt. Elzie benefits under the VSI/SSB program and continues to seek Sgt. Elzie's discharge. The irony of the current posture of this litigation is not lost on this Court. Plaintiff was ready and willing to leave the military voluntarily by April 1993 as long as he was permitted to participate in the VSI/SSB program. He had already been accepted into the program and had met the eligibility criteria.[4] The military has prolonged Sgt. Elzie's stay in the Marine Corps due to its need to enforce its discharge policy. It would appear that the military is not simply seeking to discharge Sgt. Elzie due to the purported threat to military morale and discipline, but is also seeking to punish Sgt. Elzie by denying him all benefits that a heterosexual, who has served his country in a far less distinguished fashion, is entitled to receive.

## ANALYSIS

The military discharged Sgt. Elzie and denied him the benefits of the VSI/SSB program under the military's "old" policy regarding homosexuals enumerated in Depart-ment of Defense Directive 1332.14 (January 28, 1992), *published at* 32 C.F.R. pt. 41, app. A (1992) (superseded). And in this lawsuit, Plaintiff challenges the legality and constitutionality of that "old" policy.

The old policy provides for the separation of an enlisted person who has been found to have "engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts," or who has "stated that he or she is a homosexual ... unless there is a further finding that the member is not a homosexual." *Id.* at 1332.14.H.1.c. The term homosexual is defined as "a person, regardless of sex, who engages in, desires to engage in, or intends to engage in homosexual acts." *Id.* at 1332.14.H.1.b.(1). In conformity with the Department of Defense Directive, the Marine Corps Separation and Retirement Manual ("MarCorSepMan") provides that discharge proceedings are to be instituted where there is "probable cause" that a Marine has "engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts," or has "admitted to being a homosexual or bisexual, unless there is a further finding that the member is not homosexual or bisexual." MarCorSepMan, ¶ 6207.3(b).

Since the time that Sgt. Elzie was first discharged by the Marine Corps, President Clinton signed into law a new policy concerning homosexuals in the military, popularly labelled as the "Don't Ask, Don't Tell" policy. 10 U.S.C. § 654 (1994).[5] Under the new policy, a service member who has admitted to being a homosexual has the opportunity to rebut the presumption that he "is a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage

---

4. According to Plaintiff, on February 5, 1993, Colonel T.A. Kahl, Sgt. Elzie's commanding officer, told Plaintiff that he had been accepted into the program. PI Exh. A at P00130, P01368. An internal military document also indicates that Sgt. Elzie was "previously accepted into the [ ] VSI program but was unqualified as a result of his declaration of homosexuality." See Summary Judgment Exhibit 26 at 0105.

5. With respect to the "Don't Ask" aspect of the policy, Section 571(d) of Pub.L. 103–160 provides that:

It is the sense of Congress that—

(1) the suspension of questioning concerning homosexuality as part of the processing of individuals for accession into the Armed Forces under the interim policy of January 29, 1993, should be continued, ...

(2) the Secretary of Defense should consider issuing guidance governing the circumstances under which members of the Armed Forces questioned about homosexuality for administrative purposes should be afforded warnings similar to the warnings under section 831(b) of title 10, United States Code (article 31(b) of the Uniform Code of Military Justice) [section 831(b) of this title.]

in homosexual acts." Id. at § 654(b).[6] As such, the new policy is more favorable to homosexuals than the old policy.

This case vividly underscores the folly (as opposed to unconstitutionality or illegality, which the Court does not reach at this juncture) of a policy that systematically excludes a whole class of persons who have served this country proudly and in the highest tradition of excellence. Sgt. Elzie is a Marine to whom the military should be extending appreciation rather than seeking to discharge without benefits.

Given Sgt. Elzie's superior record of achievement while in the Marine Corps, he certainly deserves to receive the benefits of the new policy. Fairness demands that the new policy be applied to Sgt. Elzie in all respects. Accordingly, the Court orders that the case be remanded for proceedings to be conducted under the new policy.[7]

Having so ruled, this Court feels compelled to note that the military's policy still raises serious constitutional questions in the context of this case. The military contends that the D.C. Circuit's ruling in Steffan v. Perry, 41 F.3d 677 (D.C.Cir.1994) (en banc ) is controlling precedent that the old policy does not run afoul of the Constitution. The facts in Steffan, however, differ from the facts in this case. In Steffan, the Plaintiff was separated from the Naval Academy during his senior year after he admitted that he was a homo-

sexual. Steffan brought suit claiming that his equal protection rights under the Fifth Amendment had been violated and sought an order "enjoining Defendants from prohibiting [him] from graduating and receiving his diploma from the Academy" and "from denying [him] commission in the United States Navy." Steffan at 684. Steffan sought to maintain his status in the military and challenged only the discharge policy.

Sgt. Elzie does more than challenge the discharge policy on equal protection grounds. He also challenges his removal from the VSI/SSB program on equal protection grounds and seeks an order declaring his "removal from the VSI/SSB program null and void" and an order restoring him "to full participation in the VSI/SSB program with all the benefits and incidents thereof." While this Court is constrained by the Steffan Court's decision that the "discharge policy" survives equal protection scrutiny, there is no similar constraint with respect to the "denial of retirement benefits" policy. The Steffan Court simply did not reach that issue.

Here, there is no dispute that Sgt. Elzie had met all the eligibility requirements for enrollment in the retirement program based on his distinguished service in the Marine Corps since 1982.[8] He was ready and willing to leave the military voluntarily once he received these benefits. There is also no dispute that he would have received these bene-

---

6. This Court has not had the opportunity to determine whether the "opportunity to rebut" is meaningful. See Able v. United States, 880 F.Supp. 968, 975–76 (E.D.N.Y.1995) ("Defendants make much of the opportunity to rebut the presumption of propensity. But that opportunity is an ignis fatuus.") (Nickerson, J.) The government represented to the Court during oral argument that some five service members processed under the new policy have successfully rebutted the presumption of propensity.

7. The government has agreed to nullify the administrative action based on the old policy, which is challenged in this lawsuit, and allow Plaintiff to be reprocessed under the new policy, with full procedural rights to a new administrative hearing.

8. Pursuant to the VSI/SSB Policy Guidance Memorandum,

The Secretary of the Military Department concerned may offer a member of the Armed

Forces the opportunity to apply or VSI/SSB if the member:

a. Has served on active duty for more than 6 years before December 5, 1991 and has completed his initial term of enlistment or initial period of obligated service prior to separation;

b. Has served at least 5 years of continuous active duty immediately preceding the date of separation;

c. Upon separation is not immediately eligible for retired or retainer pay based on his military service;

d. Is a Regular member, or if Reserve, is on active duty list; and

e. Meets such other requirements as the Secretary of the Military Department may prescribe from time to time, which may include requirements relating to years of service, skill or rating, grade or rank, and remaining period of obligated service.

See VSI/SSB Policy Guidance Memorandum at SJ 0089, Exhibit 23.

fits had he not admitted to being a homosexual.[9]

It is difficult to conceive how the military's stated rationale for discharging professed homosexuals applies to a military policy which prevents such homosexuals from receiving retirement benefits which they have earned. Sgt. Elzie's receipt of retirement benefits hardly appears to have an adverse impact on military morale and discipline. The purported justifications undergirding the discriminatory treatment of homosexual active service members, which this Circuit has accepted in *Steffan*, seem wholly inapplicable to homosexual retired service members. To arbitrarily deprive a service member of retirement benefits that he has earned merely on the basis that the member is a homosexual raises serious equal protection concerns which have not yet been addressed by this Circuit.[10]

Moreover, the constitutionality of both the "discharge" and "denial of retirement benefits" policy under the free speech clause of the First Amendment is far from resolved in the D.C. Circuit. While the D.C. Circuit held in *Steffan* that the old "discharge" policy does not violate the equal protection component of the Fifth Amendment's due process clause, the Court of Appeals did not specifically address the First Amendment. It could certainly be argued that heightened scrutiny is warranted under the First Amendment, rather than the rational basis equal protection review on the theory that the policy represents "viewpoint discrimination."

Subsequent to the Court of Appeals decision in *Steffan*, the Supreme Court made clear in *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston*, —— U.S. ——, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995)

that the statements of self-identification of sexual orientation may contain a quite specific message. "A contingent marching behind the organization's banner [proclaiming the members' sexual orientations] would at least bear witness to the fact that some Irish are gay, lesbian or bisexual, and the presence of the organized marchers would suggest their view that people of their sexual orientations have as much claim to unqualified social acceptance as heterosexuals ..." The *Hurley* Court recognized that the statement "I am homosexual" expresses a viewpoint. Both the old and new military policy treat the statements of homosexual identification and statements of heterosexual identification differently, and both might constitute viewpoint discrimination. Even with the restricted First Amendment protections in the military, *see, e.g., Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980), viewpoint discrimination in the military might be subject to strict scrutiny. *Cf. R.A.V v. City of St. Paul*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (viewpoint discrimination impermissible even within the context of fighting words, which the government may ordinarily prohibit for any reason.)

Based on the foregoing, the case will be remanded with instructions that Plaintiff's status in the Marine Corps and his eligibility for the VSI/SSB program be reviewed under the military's current policy as codified at 10 U.S.C. § 654.[11] An appropriate order accompanies this memorandum opinion.

## ORDER

This matter comes before the Court on cross-motions for summary judgment. The Court hereby **ORDERS** that the case be remanded with instructions that Plaintiff's

---

9. As an internal military document stated, Sgt. Elzie was "previously accepted into the [ ] VIS program but was unqualified as a result of his declaration of homosexuality." SJ, Exhibit 26 at 0105.

10. Under the military's VSI/SSB policy, if a service member who is receiving VSI benefits becomes ineligible for military service, the service member will continue to receive VSI benefits if the ineligibility is "due to medical, age, failure to select for promotion or *other reasons determined to be no fault of the member concerned.*" See

VSI/SSB Policy Guidance Memorandum at SJ 0091, Exhibit 23. As the Fifth Circuit noted, it is not "a crime to *be* a homosexual." *Gay Student Servs. v. Texas A & M Univ.*, 737 F.2d 1317, 1328 (5th Cir.1984) (emphasis in original). To treat homosexuals as blameworthy and not other persons may run afoul of the Constitutional guarantees of equal protection of the laws.

11. The statute is basically a codification of the policy that President Clinton announced at a news conference in the summer of 1993.

status in the Marine Corps and eligibility for the VSI/SSB program be reviewed under the military's current policy as codified at 10 U.S.C. § 654.