[No. B003410. Second Dist., Div. Six. Jan. 27, 1986.]

In re the Marriage of PATRICIA A. and MICHAEL A. KUZMIAK.
PATRICIA A. KUZMIAK, Respondent, v.
MICHAEL A. KUZMIAK, Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to rule 976.1 of the California Rules of Court, the portion of the opinion to be published follows.

COUNSEL

Robert O. Angle, Henderson & Angle, Rodney S. Melville, Melville & Iwasko, and James E. Sutherland for Appellant.

Charles G. Ward for Respondent.

OPINION

GILBERT, J.—Husband Michael A. Kuzmiak appeals the order of the trial court finding that the division of his Air Force separation pay is community property. (10 U.S.C. § 1174.)[1] We reverse the order and hold that although the trial court had jurisdiction to divide the assets of the marriage, husband's military separation pay is his separate property unless he applies for military longevity retirement.

. . . . . . . . . . . . . . . . . . . . .*

FACTS

Husband enlisted in the United States Air Force in New Jersey on May 6, 1966. He married Patricia A. Kuzmiak four months later. The parties moved under military orders to Texas the day of their marriage. The Air Force later assigned husband to duty in New York, North Dakota and fi-

---

[1] All statutory references are to title 10 of the United States Code unless otherwise stated.
*See footnote, *ante,* page 1152.

nally, California. The couple arrived in Lompoc, California in 1975 and lived together there for five years until wife filed for divorce on June 9, 1980. The trial court entered a final judgment dissolving the marriage on May 21, 1981, and decided property division two and one-half years later.[2]

. . . . . . . . . . . . . . . . . . . . . . . . . . . .*

On February 28, 1983, between the time of the final judgment dissolving the marriage and the trial of the property issues, the Air Force released husband from his command under the military's "up or out" policy. (§ 632.)[3] Husband was then entitled to "separation pay," calculated in part on the number of years he served and his annual salary. (§§ 642, 1174.) (The separation award formula is 10 percent of 12 times the member's monthly basic pay times his years of active service, with a cap of $30,000. (§ 1174(d)(1).)[4]) Husband, a captain with 16 years of military service, received the maximum award of $30,000. At the time of husband's release from duty, he was not entitled to longevity retirement benefits because he had not completed 20 years of service. (§ 3911.)

Three or four days after his release, husband reenlisted in the Air Force. He will become entitled to longevity retirement benefits once he achieves 20 years of military service. (§ 3911.) However, the government will deduct the $30,000 separation pay from the retirement benefits husband will receive. (§ 1174(h)(1).)[5] As husband explained at trial, "[W]hen I got

---

[2]Trial on the property issues occurred after the United States Supreme Court decision in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728] and after the enactment of the Federal Uniform Services Former Spouse's Protection Act (FUSFSPA). (§ 1408, enacted Sept. 8, 1982.)

*See footnote, *ante,* page 1152.

[3]Section 632 provides in part: "(a) [E]ach officer . . . who holds the regular grade of captain or major . . . who has failed of selection for promotion to the next higher regular grade for the second time and whose name is not on a list of officers recommended for promotion to the next higher regular grade shall (1) be discharged on the date requested by him and approved by the Secretary concerned, which date shall be not later than the first day of the seventh calendar month beginning after the month in which the President approves the report of the board which considered him for the second time; . . . (b) The retirement or discharge of an officer pursuant to this section shall be considered to be an involuntary retirement or discharge for purposes of any other provision of law."

[4]Subdivision (d) of section 1174 provides: "The amount of separation pay which may be paid to a member under this section is—(1) 10 percent of the product of (A) his years of active service, and (B) 12 times the monthly basic pay to which he was entitled at the time of his discharge or release from active duty or $30,000, whichever is less; . . ."

[5]Subdivision (h)(1) of section 1174 provides: "A member who has received separation pay under this section, or separation pay, severance pay, or readjustment pay under any other provision of law, based on service in the armed forces, and who later qualifies for retired or retainer pay under this title or title 14 shall have deducted from each payment of such retired or retainer pay so much of such pay as is based on the service for which he received separation pay under this section or separation pay, severance pay, or readjustment pay under any other provision of law until the total amount deducted is equal to the total amount of separation pay, severance pay, and readjustment pay received."

kicked out of the service, the option that they present to you, if you choose to stay in the service and you do get to retirement and you have collected this money, you must give it back. . . . I will start collecting retirement when the $30,000 is paid back."

The trial judge divided the $30,000 as a community retirement benefit or payment in lieu of retirement.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

On appeal husband contends that his military separation pay is his separate property under *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], and the Federal Uniformed Services Former Spouse's Protection Act (FUSFSPA) (§ 1408) and that by analogy, California courts have found layoff and termination benefits to be the separate property of the receiving spouse.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

## DISCUSSION

*Separation Pay*

For many years under California law, a spouse had a community property interest in retirement benefits earned by the other spouse from employment during the marriage. In 1981 *McCarty* v. *McCarty, supra,* 453 U.S. 210, held that a state may not divide military longevity retired pay incident to a divorce absent a federal statute permitting such action. The United States Supreme Court examined the military retirement scheme and concluded that application of state community property laws conflicted with that scheme because Congress intended retired pay to be a personal entitlement of the service member. (*McCarty, supra,* at pp. 223, 232-236 [69 L.Ed.2d at pp. 600, 605-608].) Thus, the court impliedly overruled California decisions as contrary to congressional intent.

In direct response to *McCarty,* Congress enacted the Federal Uniformed Services Former Spouse's Protection Act (FUSFSPA). (§ 1408; House Conf. Rep. No. 97-749, 1982 U.S. Code Cong. & Admin. News, p. 1570.) FUSFSPA, however, does not permit the states unlimited powers over military retirement benefits. For example, a nonmember spouse may not sell or assign his or her interest. (Subd. (c)(2).) The parties must have been

---

*See footnote, *ante,* page 1152.

married 10 years (subd. (d)(2)) and payments to the nonmember spouse may not exceed 50 percent of the member's disposable pay (subd. (e)(1)). (*In re Marriage of Costo* (1984) 156 Cal.App.3d 781, 786-787 [203 Cal.Rptr. 85].) Moreover, subdivision (c)(1) of FUSFSPA permits a state court to "treat disposable *retired* or *retainer pay* payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse. . . ." (Italics added.)

■ Although separation pay is calculated in a fashion similar to retired pay (§ 1401), we think it is not embraced within the meaning of "disposable retired or retainer pay" under FUSFSPA. Subdivision (a)(4) defines retired or retainer pay as a "monthly" payment; husband's separation pay here was a one-time payment. Moreover, section 1174 describes the severance benefit upon involuntary discharge as "separation pay." FUSFSPA does not mention separation pay in defining retired or retainer pay.

Furthermore, unlike military benefits based upon longevity of service, separation pay does not serve to compensate for past services. Although longevity of service determines the amount of this one-time payment, the right to separation pay occurs only when there is an involuntary discharge of the service member. The legislative history of section 1174, awarding separation pay upon involuntary discharge, states that the purpose of the payment is to financially assist the member during the transition period until he or she obtains private employment: "The separation pay is a contingency payment for an officer who is career committed but to whom a full military career may be denied. It is designed to encourage him to pursue his service ambition, knowing that if he is denied a full career under the competitive system, he can count on an adequate readjustment pay to ease his reentry into civilian life." (Sen. Rep. No. 96-1462, 2d Sess. (1980), reprinted in 1980 U.S. Code Cong. & Admin. News, p. 6361.)

If a marriage subsists at the time the service member is involuntarily discharged, the loss of employment becomes a community loss and separation pay serves to ameliorate this loss. If the service member is not married at the time of discharge, however, the adjustment to civilian life is his alone to make. Accordingly, the separation pay should be his separate property.

■ We have located but one reported decision analyzing the community or separate property characteristics of separation pay. In *Perez v. Perez* (Tex. 1979) 587 S.W.2d 671, the military released the husband from duty under circumstances entitling him to separation pay. Despite their divorce seven years earlier, wife sued for a portion of the payment, contending it was a retirement benefit acquired during the marriage. The Texas Supreme

Court concluded the purpose of the payment was to assist the service member in adjusting to civilian life, and the payment was not recompense for past services. (*Perez, supra,* at p. 673.) The court also held that application of community property principles to the payment would defeat federal objectives. (*Ibid.*) The court expressly declined to rule, however, whether wife was entitled to any retirement benefits if husband reenlisted and served until retirement. (*Ibid.*)

In similar cases, California courts have analyzed the purposes of "termination" or "layoff" benefits in determining their separate property or community character. *In re Marriage of Skaden* (1977) 19 Cal.3d 679 [139 Cal.Rptr. 615, 566 P.2d 249], concerned termination benefits consisting of a percentage of insurance premiums collected on insurance policies placed by a former insurance agent. Our Supreme Court concluded that the language of the employment contract indicated that the commissions were community property because they were deferred compensation for the agent's previous endeavors. (*Skaden, supra,* at pp. 687-688.)

In *In re Marriage of Wright* (1983) 140 Cal.App.3d 342 [189 Cal.Rptr. 336], an assistant hospital administrator received termination pay when he resigned his position. Wright's employer testified that the payment was made in recognition that Wright would encounter difficulties in securing future employment as a hospital administrator. (*Id.,* at p. 343.) Since the payment was made after the parties separated, the court held the payment was separate property. (*Id.,* p. 345.)

*In re Marriage of Flockhart* (1981) 119 Cal.App.3d 240 [173 Cal.Rptr. 818], concerned a "weekly layoff benefit" paid to displaced timber employees when the government expanded Redwood National Park. The court analogized the federal layoff benefit to disability benefits and recognized that both compensate the recipient for loss of future earnings occasioned by layoff or disability. (*Flockhart, supra,* at p. 243.) The court then denied wife any community interest in the layoff benefits because they did not compensate husband for employment during marriage. (*Ibid.*)

We are satisfied that Congress did not intend separation pay to be compensation for past services, and that under the reasoning of *Flockhart* and the California disability benefits decisions (*In re Marriage of Stenquist,* (1978) 21 Cal.3d 779, 787 [148 Cal.Rptr. 9, 582 P.2d 96]), the payment is the separate property of the service member. Furthermore, FUSFSPA does not discuss court division of separation pay incident to divorce. ■ This would end the matter if it were not for subdivision (h)(1) of section 1174 (fn. 5, *ante*), permitting the government to deduct separation pay from a service member's longevity retirement benefits as they are received.

If a member reenlists after involuntary discharge and subsequently receives a longevity pension after serving 20 years, the purposes of the separation pay have not been fulfilled. Subdivision (h)(1) of section 1174 recognizes this by compelling reimbursement of separation pay from the member's retirement payments. There is no reason for finding separation pay to be the member's separate property once the member reenlists and earns a longevity pension.

Therefore we conclude, wife presently has an interest in husband's nonmatured longevity pension. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [216 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) Husband's application for a longevity retirement pension and the government's withholding of $30,000 from this retirement pay deprives wife of her community property interest in these funds. Our Supreme Court has held, that when a husband who is a service member elects to take a disability pension over a longevity pension, he cannot defeat the community property interests of his wife by unilaterally transmuting community property into separate property. (*In re Marriage of Stenquist, supra,* 21 Cal.3d 779, 782. Such an election is inconsistent with "the protective philosophy of the community property law." (*Ibid.*) We think this reasoning pertains here.

Although *McCarty* v. *McCarty, supra,* 453 U.S. 210, appears inconsistent with *In re Marriage of Stenquist, supra,* the reasoning of *Stenquist* is still vital. Our Supreme Court recently affirmed and applied the *Stenquist* reasoning to private disability insurance proceeds purchased with community funds in *In re Marriage of Saslow* (1985) 40 Cal.3d 848 [221 Cal.Rptr. 546, 710 P.2d 346]). The court declared that ". . . disability benefits have been denominated community property to the extent that they equal the benefits foregone under a retirement pension. (*Ibid.*)

We also note that *McCarty* technically did not discuss an election of one form of benefit over another. (*In re Marriage of Mastropaolo* (1985) 166 Cal.App.3d 953, 959 [213 Cal.Rptr. 26].) Moreover, within months of *McCarty,* Congress enacted FUSFSPA with the manifest purpose of nullifying *McCarty.* (*Id.,* at p. 960.)

For these reasons, we conclude that wife has a community property interest in husband's longevity pension, including the $30,000 separation pay the government will withhold from his retirement benefits. This holding recognizes the separate property characteristic of the separation pay (until husband's actions in reenlisting and earning a longevity pension) and also protects wife's rights to a community property asset. Moreover, our holding does not frustrate congressional intent that separation pay ease the service member's reentry into civilian life.

The proper division of husband's longevity retirement benefits remains within the trial court's discretion. The parties may reach a reasonable agreement concerning division of the benefits. (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 428 [174 Cal.Rptr. 493, 629 P.2d 1].) If not, the trial judge may divide the benefits according to any of the methods described by our Supreme Court in *Gillmore,* pages 428-429 or *Skaden, supra,* 19 Cal.3d 679, 688-689.

. . . . . . . . . . . . . . . . . . . . . . .*

Accordingly, the order is reversed and the case remanded for a new hearing. Each party to bear own costs on appeal.

Stone, P. J., and Abbe, J., concurred.

A petition for a rehearing was denied February 25, 1986, and appellant's petition for review by the Supreme Court was denied May 22, 1986. Reynoso, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 1152.