In re the MARRIAGE OF Ronald D. McELROY, Appellee,

and

Donna M. McElroy, Appellant.

No. 94CA0957.

Colorado Court of Appeals, Div. V.

Aug. 10, 1995.

As Modified on Denial of Rehearing Sept. 14, 1995.

F.R. Pamp, Colorado Springs, for appellee.

John D. Braun, Colorado Springs, for appellant.

Opinion by Judge ROTHENBERG.

There are two primary issues in this appeal by Donna M. McElroy (wife) from a post-dissolution of marriage action: (1) whether the trial court had jurisdiction to award wife a portion of the special separation benefits (SSB) received by former husband, Ronald D. McElroy (husband), upon his voluntary discharge from the Air Force, or whether the court was preempted by federal legislation from doing so; and (2) if the court was not preempted, whether the SSB constituted marital property subject to division. Because we hold that the trial court was not preempted from exercising jurisdiction over the SSB benefit and that the SSB does constitute marital property, we reverse and remand for further proceedings.

As part of their marital settlement agreement approved by a California court in 1988, the parties agreed wife would receive 25% of husband's "gross military retirement/pension benefits" from the Air Force. Husband was to notify her in writing within 10 days of his eligibility to receive such benefits.

The agreement also provided for the establishment of a trust, revocable in writing by wife. As trustee, husband was required to remit wife's 25% benefit to her within 5 days after receiving each payment. The purpose of the trust was to secure wife's share of the benefit in the event of delays in obtaining it or if she were unable to obtain direct enforcement from the Air Force. The parties' agreement further provided the trial court would retain jurisdiction over the retirement/pension provisions to comply with any specific language requirements of the Air Force.

In 1988, wife moved to Colorado and husband registered the California decree in this state. Since then, Colorado has exercised jurisdiction in this case.

After 16 years of creditable military service, husband accepted SSB funds totalling over $100,000 in gross benefits, but failed to notify wife. When wife learned he had done so, she filed a motion with the trial court requesting at least 25% of the benefits, plus interest on her share from the date husband had received them.

The trial court found that: (1) the SSB constituted marital property; (2) if husband eventually completes his military career and retires, he will have the option to "buy back" his retirement benefits by repaying the SSB; (3) under such circumstances, husband controlled receipt of wife's award and she should have the option of accepting 25% of the SSB or of retaining her right to 25% of the future retirement pay; and (4) it would be equitable under the California decree to award wife 25% of the net payment because husband's acceptance of the SSB had deprived her of her portion of his retirement.

Nevertheless, the trial court ruled that it lacked authority to allocate 25% of the net payment to wife or to order such payment because federal law controls the issue. On

the basis of preemption, therefore, it denied her motion for division of the SSB. After finding no significant difference between the parties' respective incomes, the court also denied wife's request for attorney fees.

## I.

Wife contends the trial court erred in determining that federal law preempted its ability to divide the special separation benefit. We agree.

## A.

█ In 1991, Congress established two related programs to reduce the size of the armed forces in response to the perceived diminished threat to United States' interests. *Elzie v. Aspin,* 841 F.Supp. 439 (D.D.C.1993). SSB payments are provided for under 10 U.S.C. § 1174a (1994) and voluntary separation incentive benefits (VSI) are provided for by 10 U.S.C. § 1175 (1994).

The programs were designed to compensate career-oriented service members who had been denied a career opportunity because of circumstances beyond their control. H.Conf.Rep. No. 101–665, 101st Cong., 2d Sess. 6 (1990), *reprinted in* 1990 U.S. Code Cong. & Admin. News 2962, 2995.

The pertinent statutes have reciprocal provisions granting armed forces members, who have been offered benefits under either program, the option to choose benefits under the other program. 10 U.S.C. §§ 1174a(e)(3) & 1175(c) (1994).

An eligible member of the armed forces who requests separation under § 1174a(a) receives SSB that is a lump sum benefit equal to 15% of that member's monthly basic pay multiplied by 12 and by the number of years of service. 10 U.S.C. § 1174a(b)(2)(A) (1994). Legislative history shows that pay offered under the SSB program was established at 15% of basic pay, rather than the normal 10% applicable in determining involuntary separation pay, so that such enhancement would provide an equitable, up-front incentive for volunteer personnel who are not retirement-eligible to choose in lieu of facing the prospect of involuntary separation. H.Conf.Rep. No. 102–311, 102d Cong., 1st Sess. 3 (1991), *reprinted in* 1991 U.S. Code Cong. & Admin. News 1112.

A member of the armed forces who is offered the VSI receives benefits computed under a formula providing monthly payments for a period equal to twice the number of service years. 10 U.S.C. § 1175(d)(3)(e)(1) (1994). The stated purpose of the VSI is to "provide a financial incentive to members of the armed forces ... for voluntary appointment, enlistment, or transfer to a reserve component...." Section 1175(a).

Additional legislative history discussing the "force drawdown" and predating enactment of the VSI/SSB programs recommended a comprehensive package of benefits to assist separating personnel and their families in adjusting to civilian life. In a different context, one court has described the VSI and SSB programs as an inducement to elect early retirement. *Elzie v. Aspin, supra.*

## B.

The trial court concluded that, based upon preemption, the court lacked subject matter jurisdiction to award any portion of husband's SSB. We do not agree.

█ The concept that federal enactments may prohibit the enforcement of state laws is grounded upon the Supremacy Clause of the United States Constitution which provides that the laws of the United States, made pursuant to the national constitution, "shall be the supreme law of the land." U.S. Const., art. VI.

█ Any state law that conflicts with federal legislation, either directly or indirectly because its enforcement would stand as a barrier to the accomplishment of Congress' full purposes and objectives, is without effect and cannot be enforced. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Celebrity Custom Builders v. Industrial Claim Appeals Office,* —— P.2d —— (Colo.App. No. 94CA1937, June 15, 1995). *See also* L. Tribe, *American Constitutional Law* § 6–25 (2d ed. 1988).

■ Domestic relations are preeminently matters of state law. Therefore, when Congress passes general legislation, it rarely intends to displace state authority in this area. *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

On the rare occasion when state family law has come into conflict with a federal statute, the United States Supreme Court has limited review under the Supremacy Clause to a determination of whether Congress has positively required by direct enactment that state law be preempted. *Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987) (no preemption found regarding state statute allowing a disabled veteran to be found in contempt for failing to pay child support, even when veteran's benefits were the only means for satisfying that obligation). *See In re Marriage of Rahn,* 1995 WL 478464, —— P.2d —— (Colo.App. No. 94CA0106, August 10, 1995) (ERISA does *not* preempt enforcement of otherwise valid prenuptial agreement with regard to waiver of spousal death benefits).

In *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court held that federal law precluded state courts from distributing military retirement benefits in marital dissolution proceedings. Thereafter, Congress responded to the *McCarty* decision by enacting the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408 (1982), which gave the states express authority to treat a service member's disposable retired or retainer pay as property subject to equitable distribution. *See In re Marriage of Gallo,* 752 P.2d 47 (Colo.1988); *In re Marriage of Grubb,* 745 P.2d 661 (Colo.1987).

Relying on *Mansell v. Mansell, supra,* husband contends that the field of military financial benefits is completely preempted by federal law. However, in *Mansell,* preemption was found based upon a specific provision in the definitional section of the USFSPA expressly excluding consideration of a service member's *disability pay* from "disposable retired or retainer pay." *See* 10 U.S.C. § 1408(a)(4)(B) (1994). Nothing in *Mansell* prohibits the division of a service member's SSB. Indeed, the Court in *Mansell* concluded the USFSPA's savings clause

was designed to defeat any inference that the federal direct payments mechanism displaced the authority of state courts to divide and garnish property not covered by the mechanism.

Nor do the statutes governing the SSB and VSI programs contain any prohibition concerning the power of the state court to determine the nature of such benefits. To the contrary, the legislative history shows that SSB and VSI benefits were adopted to benefit service members and their families and were designed to induce otherwise career-oriented members voluntarily to resign and to seek early retirement. *See Elzie v. Aspin, supra.* Hence, we perceive no inference of an intent to preempt. *See Belgard v. United Airlines,* 857 P.2d 467 (Colo.App. 1992).

In the two reported appellate decisions we have found that have considered the preemption issue in the context of SSB and VSI benefits, both have concluded that federal law does *not* preempt state courts from dividing SSB and VSI benefits. *Abernethy v. Fishkin,* 638 So.2d 160 (Fla.App.1994); *In re Marriage of Crawford,* 180 Ariz. 324, 884 P.2d 210 (App.1994).

In *In re Marriage of Crawford, supra,* 884 P.2d at 212, the Arizona Court of Appeals discussed Congress' intent in enacting the SSB and VSI programs:

We find ... relevant a 1990 House Report predating the enactment of the SSB program which in relation to the congressionally mandated force drawdown recommended a comprehensive package of transition benefits to assist separating personnel and their families, H.R. rep. No. 665, 101st Cong., 2d Sess. (1990), suggesting that equitable division of SSB benefits is not inconsistent with congressional intent.

The *Crawford* court also noted that literature distributed by the Department of Defense explaining the SSB and VSI program states:

The treatment of VSI or SSB is not dictated by Federal law. It will be up to the state courts to rule on the divisibility of these incentives.

*In re Marriage of Crawford, supra,* (fn. 5) (emphasis added).

Contrary to husband's suggestion, *In re Marriage of Kuzmiak,* 176 Cal.App.3d 1152, 222 Cal.Rptr. 644, *cert. denied,* 479 U.S. 885, 107 S.Ct. 276, 93 L.Ed.2d 252 (1986) is distinguishable and does not persuade us to reach a different result. First, *Kuzmiak* was decided before the SSB and VSI programs ·were adopted. Secondly, it involved the issue of preemption over separation pay received upon involuntary discharge under 10 U.S.C. § 1174 (1994). *See also Baer v. Baer,* 657 So.2d 899 (Fla.Dist.Ct.App.1995) (where service member was given ultimatum to accept VSI or be immediately involuntarily terminated, his VSI payments constituted severance pay rather than retirement pay and was separate property; preemption not in issue).

Here, however, the trial court found with record support that husband had been in the military for fifteen and one-half years and was on a career track when he voluntarily chose the SSB.

In summary, we hold that the trial court was not preempted by federal law from characterizing the SSB funds received by husband as marital property and from awarding a portion of them to wife.

## II.

■ The parties disagree as to how the SSB funds should be characterized under Colorado law. They both agree that, if the SSB is a retirement benefit, it is marital property and subject to the parties' agreement. However, in support of the judgment, husband asserts that the SSB should be characterized as severance and, therefore, his separate property, rather than as a retirement benefit. We agree with the trial court that the SSB funds constitute marital property.

■ Marital property subject to division generally does not include property acquired after a dissolution. *In re Marriage of Faulkner,* 652 P.2d 572 (Colo.1982). However, compensation which is deferred until after the dissolution, but fully earned during the marriage, is marital property. *In re Marriage of Miller,* 888 P.2d 317 (Colo.App.1994). Also, a non-vested military pension constitutes marital property subject to division un-

der § 14–10–113, C.R.S. (1987 Repl.Vol. 6B). *In re Marriage of Beckman,* 800 P.2d 1376 (Colo.App.1990).

■ In contrast, severance pay is a salary substitute for wages while the employee searches for a new job. Thus, it is the separate property of the dismissed employee. *In re Marriage of Holmes,* 841 P.2d 388 (Colo.App.1992).

■ The fact that the amount of benefits to be received is based upon the length of employment or the current salary is not dispositive of the nature of the benefit in question. *See In re Marriage of Holmes, supra. See also In re Marriage of Smith,* 817 P.2d 641 (Colo.App.1991) (classifying workers' compensation benefits as marital property or separate property depending on the loss compensated for).

Here, the·SSB funds awarded to husband were for a voluntary termination at his election, even though the enhanced payment was designed to induce him to exercise the option in lieu of being potentially subjected to involuntary termination. The legislative history of § 1174a expressly indicates that the payment was provided as a contingency payment for an officer who was career committed, but to whom a full military career might be denied, and was designed to benefit both the member and his family. Thus, upon making the election, husband had an absolute right to receive either the lump sum SSB payment or, in the alternative, a VSI payment monthly based upon a formula providing monthly payments for a period equal to twice the number of service years. 10 U.S.C. § 1175(d)(3)(e)(1) (1994).

Husband acknowledged that, if he ultimately became eligible for a pension, he would be required to reimburse the government for the amount of the SSB that he had already received. *See* 10 U.S.C. §§ 1174a(g) & 1174(h) (1994). This pay-back provision also supports the trial court's determination that the SSB benefit is in lieu of retirement pay, and therefore constitutes marital property.

For these reasons, we conclude, as did the trial court, that the SSB received by husband has more of the characteristics of a deferred

compensation plan than a severance payment and, therefore, constituted marital property subject to distribution. *See In re Marriage of Crawford, supra* (SSB payments constitute retirement pay and are marital property subject to division); *Abernethy v. Fishkin, supra* (VSI payments constitute retirement pay and are marital property subject to distribution.). *But see Baer v. Baer, supra; Kelson v. Kelson,* 647 So.2d 959 (Fla.Dist.Ct.App.1994) (VSI payments not retirement); *McClure v. McClure,* 98 Ohio App.3d 27, 647 N.E.2d 832 (1994) (VSI payments more analogous to severance benefits than retirement benefits).

In view of this conclusion, we reject husband's related argument that wife did not bargain for the payment of anything but retirement or pension benefits and that the trial court lacked the authority to redistribute the pension benefit as it existed in the form of the SSB. *See In re Marriage of Wells,* 850 P.2d 694 (Colo.1993).

Since the trial court has already determined that the SSB is marital property and found that it would have awarded 25% of the net benefit to wife, it is necessary to remand this case to the trial court only for the entry of further orders to effect payment to wife of that designated share. On remand, the court should reconsider wife's request for interest on the unpaid portion of her share of the SSB.

### III.

■ Wife also contends that the trial court erred in denying her request for attorney fees. We disagree.

The trial court denied wife's request for fees under § 14–10–119, C.R.S. (1986 Repl. Vol. 6B) based upon a determination that there was no significant difference between the parties' respective incomes. Because the record supports the court's finding as to the respective incomes of the parties and because the issue on appeal constituted one of first impression, the trial court did not abuse its discretion in denying attorney fees.

The order is reversed insofar as it denied wife division of the special separation benefits received by husband, and the cause is remanded to the trial court for further pro-ceedings consistent with the views expressed herein. That part of the order denying an award of attorney fees is affirmed.

RULAND, J., concurs.

ROY, J., dissents.

Judge ROY dissenting.

I respectfully dissent.

In my view, there is a federal preemption which precludes a state court from treating the Special Separation Benefit Program created and implemented by 10 U.S.C. § 1174a (1994) as marital property subject to division.

### I.

Domestic relations are preeminently matters of state law, and therefore, Congress, when it passes general legislation, rarely intends to displace state authority in this area. *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

On the rare occasion when state family law has come into conflict with a federal statute, the United States Supreme Court has limited review under the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be preempted. *Rose v. Rose,* 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599, 607 (1987). Before a state law governing domestic relations will be overridden, it "must do 'major damage' to 'clear and substantial' federal interests." *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1, 11 (1979). In my view, this test is met here.

Retirement is authorized for members of the United States Air Force based on years of service by 10 U.S.C. §§ 8911, 8914, 8917, 8918, 8920, 8924, 8925 & 8926 (1994); and retirement pay is computed in accordance with 10 U.S.C. §§ 8991 & 1401–1412 (1994). Most members of the armed forces who retire do so after twenty years of active service at which time they are entitled to, essentially, one-half of the pay for the highest rank or grade attained. There is no vesting, or partial vesting, of retirement benefits prior to completion of the prescribed term of service.

My analysis of the preemption issue, as it relates to the military voluntary separation benefits, begins with *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In *McCarty,* the United States Supreme Court held that there was a conflict between the federal retirement statutes and the community property right created by state law which sufficiently injured the objectives of the federal program to require non-recognition of the community property right, *i.e.,* there was federal preemption pursuant to the Supremacy Clause. In its analysis as to the extent of the injury, the court stated, in part:

> The interference with the goals of encouraging orderly promotion and a youthful military is no less direct. . . . But the reduction of retired pay by a community property award not only discourages retirement by reducing the retired pay available to the service member, but gives him a positive incentive to keep working, since current income after divorce is not divisible as community property. . . . Congress has determined that a youthful military is essential to the national defense; it is not for States to interfere with that goal by lessening the incentive to retire created by the military retirement system.

*McCarty v. McCarty, supra,* 453 U.S. at 235, 101 S.Ct. at 2742, 69 L.Ed.2d at 607.

In direct response to *McCarty,* Congress adopted the Uniformed Services Former Spouses' Protection Act of 1982, Pub.L. No. 97–252, Title X, 96 Stat. 730 (1982) (Act), which is now primarily codified, with amendments, as 10 U.S.C. § 1408 (1994). While the Act is detailed, its scope is very limited. The Act applies to "disposable retired [or retainer] pay," which is a defined term. 10 U.S.C. § 1408(a)(4) & (7) (1994). The operative language is:

> Subject to the limitations of this section, a court may treat *disposable retired [or retainer] pay* payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C. § 1408(c)(1) (1994) (emphasis added).

Subsequently, in *Mansell v. Mansell, supra,* the Supreme Court dealt with disability benefits which are specifically excluded from the definition of "disposable retired or retainer pay." 10 U.S.C. § 1408(a)(4)(B) (1994). In response to the argument that Congress intended a complete rejection of *McCarty,* the court stated:

> Where, as here, the question is one of statutory construction, we begin with the language of the statute. . . . [Wife's] argument faces a formidable obstacle in the language of the Former Spouses' Protection Act. Section 1408(c)(1) of the Act affirmatively grants state courts the power to divide military retirement pay, yet its language is both precise and limited. It provides that 'a court may treat disposable retired or retainer pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.' § 1408(c)(1). The Act's definitional section specifically defines the term 'disposable retired or retainer pay' to exclude, inter alia, military retirement pay waived in order to receive veterans' disability payments. § 1408(a)(4)(B). *Thus, under the Act's plain and precise language, state courts have been granted the authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay as community property.*

*Mansell v. Mansell,* 490 U.S. at 588–89, 109 S.Ct. at 2028–29, 104 L.Ed.2d at 685 (emphasis added).

The exclusion of disability pay (civil service and veteran's benefits) from "disposable retired or retainer pay" in 10 U.S.C. § 1408(a)(4)(B), and the manner of the exclusion, are important to the analysis. Disability pay is not, and would not normally be linked or confused with, "retired or retainer pay." The exclusion takes the form of deducting from "gross" retired or retainer pay the amount of any disability benefit received in lieu of retired or retainer pay.

The reason for the "exclusion," and its form, in my view, is that a retired service

member eligible for disability benefits may voluntarily elect the disability benefit. There is an incentive to elect disability benefits as they are free from income taxation. Because the retired service member may voluntarily elect disability benefits, state courts might, and probably would, include disability pay in retired or retainer pay to preclude any detrimental impact on the former spouse. The exclusion precludes this logical, if not compelling, conclusion which is precisely what the majority is doing in this instance with respect to voluntary separation pay.

The Act does not expressly exclude disability pay, which may be received by former members of the armed forces who are not eligible for retired or retainer pay, from being considered community or marital property. However, the impact of the exclusion of disability benefits from retired or retainer pay under the Act has been a series of cases holding that disability pay is excluded from the Act and may not be considered as marital or community property subject to division upon dissolution of marriage based primarily on federal preemption. *McHugh v. McHugh*, 124 Idaho 543, 861 P.2d 113 (Idaho App.1993); *Hapney v. Hapney*, 37 Ark.App. 100, 824 S.W.2d 408 (1992); *Wallace v. Fuller*, 832 S.W.2d 714 (Tex.App.1992); *Inzinna v. Inzinna*, 456 So.2d 691 (La.App.1984); *but see Campbell v. Campbell*, 474 So.2d 1339 (La.App.1985).

In my view, the United States Supreme Court has recognized that preemption with respect to a servicemember's pay and benefits is broad and pervasive. *See McCarty v. McCarty, supra.*

I recognize that other preemptions are not as pervasive. *In re Marriage of Rahn*, 1995 WL 478464, —— P.2d —— (Colo.App. No. 94CA0106, August 10, 1995) (ERISA preemption with respect to the regulation of retirement plans and waiver of surviving spouse benefits does not preclude the recognition and implementation of an otherwise valid prenuptial agreement waiving any interest in a dissolution of marriage proceeding).

The distinction, in my view, relates to both the source of the federal preemption and its purpose. Federal preemption in the regulation of retirement plans is predicated on congressional intent, arises under Article VI of the United States Constitution, and relates to a subject which would otherwise be legitimate state interest and regulation. The powers to raise and support an army; to provide and maintain a navy; to make rules for the government and regulation of land and naval forces; to declare war; and to provide for the organizing, arming, and disciplining of the militia are vested in Congress and are of independent constitutional dimension. U.S. Const. art. I, § 8. *See McCarty v. McCarty, supra.*

Therefore, federal preemption with respect to military pay and benefits is broad and pervasive. The Act is, in my view, narrow by its terms and should be so construed.

## II.

The benefit received by husband in this matter was authorized by 10 U.S.C. § 1174a which was adopted by Congress in 1991. *See Elzie v. Aspin*, 841 F.Supp. 439 (D.D.C.1993). The fact that the court in *Elzie* referred to the voluntary separation benefit as "retirement" is, for me, neither binding nor persuasive. With respect to the purpose of the voluntary separation program, the conference committee stated:

> The conferees take this action because of their concern over the effect of strength reductions during the next few years on our men and women in uniform and their families. The conferees especially recognize that this drawdown in strength is different from previous drawdowns because it affects people who are a product of an all volunteer force. Therefore, the conferees would provide these temporary authorities as tools to assist the military Services in selectively reducing, on a voluntary basis, that portion of the career personnel inventory that is not retirement eligible. The conferees believe that these authorities would give a reasonable, fair choice to personnel who would otherwise have no option but to face selection for involuntary separation, and to risk being separated at a point not of their own choosing.

With regard to the first of the two provisions, the conferees agree that the 'voluntary' separation pay benefit would be calculated at 15 percent of basic pay multiplied by the number of years of service of the separating member. Current involuntary separation pay is calculated on 10 percent of basic pay multiplied by the number of years of service of the separating member. The conferees believe that this enhancement will provide an equitable, up-front incentive for personnel to choose in lieu of facing the prospect of involuntary separation.

H.R.Conf.Rep. No. 311, 102d Cong., 1st Sess. 556, *reprinted in* 1991 U.S. Code Cong. & Admin. News 1042, 1112.

The purposes announced by the Conference Committee for the adoption of voluntary separation pay clearly fall well within the federal interests relied upon by the Supreme Court for finding preemption in the first instance. *See McCarty v. McCarty, supra.*

Significantly, in my view, Congress did not amend the Act to include voluntary separation benefits when such benefits were initially authorized in 1991, and did not separately provide that voluntary separation benefits could be treated by state courts as community or marital property and therefore subject to division.

For the reasons expressed above, I do not believe state courts are accorded authority by the Act to treat any benefit similar to, or arguably in lieu of, retirement or retainer pay as marital or community property subject to division in state dissolution of marriage proceedings. *See In re Marriage of Kuzmiak,* 176 Cal.App.3d 1152, 222 Cal.Rptr. 644, *cert. denied,* 479 U.S. 885, 107 S.Ct. 276, 93 L.Ed.2d 252 (1986) (involuntary separation benefit not community property subject to division); *Baer v. Baer,* 657 So.2d 899 (Fla.Dist.Ct.App.1995); *Kelson v. Kelson,* 647 So.2d 959 (Fla.Dist.Ct.App.1994); *McClure v. McClure,* 98 Ohio App.3d 27, 647 N.E.2d 832 (1994).

I would, therefore, affirm the trial court.