Marsh v. Wallace 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00313-CV







Richard Lee Marsh, Appellant




v.




Wanda Maria Wallace, Appellee








FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT


NO. FA89-0553-A, HONORABLE DICK ALCALA, JUDGE PRESIDING








 This cause presents the issue of whether a divorce decree awarding a former spouse
a portion of her ex-husband's military retirement benefits entitles her to receive a share of a
Special Separation Benefit ("SSB") lump sum payment received pursuant to 10 U.S.C.A. § 1174a
(West Supp. 1996). Appellant Richard Lee Marsh ("Marsh") appeals from the trial court's order
enforcing the decree by awarding a portion of the SSB payment to his former wife, appellee
Wanda Maria Wallace ("Wallace"). We will affirm the trial court's order.



BACKGROUND


 Marsh and Wallace were divorced in 1989. The divorce decree provided that
Wallace receive twenty-nine percent of Marsh's retirement pay if, as, and when Marsh begins to
receive retirement pay. (1) At the time of the divorce, Marsh was not yet eligible to draw retirement
pay but was serving on active duty with the United States Air Force, classified as an 0-3 with
thirteen years of service. In 1992, Marsh elected to separate voluntarily from active duty in the
Air Force. Taking advantage of newly enacted legislation, Marsh was able to be released from
the service before becoming eligible for retirement but nevertheless receive a lump sum SSB
payment of $86,892.16 based upon his rank, base pay and years of service. See 10 U.S.C.A
§ 1174a(b)(2) (West Supp. 1996). Following his separation from active duty, Marsh has served
in the military reserves, accruing additional credit toward retirement, as the statute permits. See
10 U.S.C.A. § 8911 (West Supp. 1996). In the event that he eventually becomes eligible to
receive retirement benefits, those benefits will be reduced by the amount of the SSB lump sum
payment he received. See 10 U.S.C.A. § 1174a(g) (West Supp. 1996). 

 Wallace filed a motion to enforce the divorce decree, alleging that the SSB payment
was retirement pay as described in the property division. The trial court ordered Marsh to make
an appearance. Marsh filed a pro se answer denying that he had received any retirement pay from
the military, but he failed to appear at the hearing. The trial court rendered a default judgment
against Marsh, implicitly concluding that the SSB payment was retirement pay and awarding
Wallace almost $40,000, representing her share under the divorce decree. Marsh filed a motion
to set aside the default judgment. The court declined to relitigate the legal issue of whether
Marsh's SSB payment was retirement pay but granted a new trial with respect to the amount of
the SSB payment Marsh had received and the proportionate share that should be awarded to
Wallace. Following the second hearing, the trial court awarded Wallace $21,606.29 out of
Marsh's net SSB payment and issued a conclusion of law that "Special Separation Pay received
pursuant to 10 U.S.C. Sec. 1174a is retirement pay." Marsh appeals the trial court's order by
three points of error.



DISCUSSION


 In his first two points of error, Marsh complains that the trial court erred in
concluding that the SSB payment he received pursuant to section 1174a was retirement pay and
therefore divisible under the parties' divorce decree. Marsh contends that this issue presents a
question of law. In his third point of error, Marsh argues alternatively that, if we determine the
matter is a question of fact, then the court erred in failing to grant a new trial on the issue. We
agree that whether the SSB payment was retirement pay is a legal issue for the court to determine. 
In any event, Marsh failed to support his third complaint with citation to any authority, and has
therefore waived any error. See Tex. R. App. P. 74(f) (appellate brief must include discussion
of the authorities relied upon to maintain the point at issue); see also D/FW Commercial Roofing
Co. v. Mehran, 854 S.W.2d 182, 189 (Tex. App.--Dallas 1993, no writ); Helle v. Hightower, 735
S.W.2d 650, 654 (Tex. App.--Austin 1987, writ denied); Rayburn v. Giles, 182 S.W.2d 9, 14
(Tex. Civ. App.--San Antonio 1944, writ ref'd) (failure to cite to applicable authority in support
of point of error constitutes waiver of the point). Therefore, we overrule point of error three.

 The divorce decree awarded Wallace a portion of Marsh's "retirement pay." The
trial court awarded Wallace part of the SSB payment in enforcement of this property division. 
Therefore, the narrow issue before this court is whether the trial court erred in concluding that
Marsh's SSB lump sum payment constituted retirement pay under the terms of the decree. Marsh
argues that SSB benefits are in the nature of gratuitous severance pay awarded as compensation
for lost future earnings, not deferred pension pay compensation earned for past services. In
reaching our decision, we conclude that the SSB payment Marsh received was in the nature of
retirement pay, compensating him now for the retirement benefits he would have received in the
future. This is a case of first impression in Texas.

 In support of his position, Marsh analogizes SSB benefits paid under U.S.C.
§ 1174a to benefits paid under U.S.C. §§ 687, 1201 and 1174, benefits which all have been
deemed not to be divisible retirement pay because they are not deferred payment for past services. 
See Perez v. Perez, 587 S.W.2d 671 (Tex. 1979) (noting Congressional intent that benefit
received under section 687 following involuntary release from armed services deemed non-earned
gratuity to service member to aid readjustment to civilian life, not payment for service previously
rendered); Wallace v. Fuller, 832 S.W.2d 714 (Tex. App.--Austin 1992, no writ) (holding military
disability benefits received pursuant to section 1201 are not included in the Former Spouses'
Protection Act's (2) definition of "disposable retirement pay" and therefore not subject to division);
Kuzmiak v. Kuzmiak, 222 Cal. Rptr. 644 (Cal. Ct. App.), cert. denied, 479 U.S. 885 (1986)
(noting Congressional intent that separation pay received under section 1174 upon involuntary
discharge from military is not compensation for past services but payment to ease reentry into
civilian life). Marsh also cites to decisions in other states addressing voluntary separation benefits
under section 1175. See McClure v. McClure, 647 N.E.2d 832 (Ohio Ct. App. 1994) (payments
paid pursuant to 10 U.S.C. § 1175 were not divisible under facts of case where husband forced
to "voluntarily" separate from service); Kelson v. Kelson, 647 So.2d 959 (Fla. 1st. Dist. Ct. App.
1994) (payments received pursuant to 10 U.S.C. § 1175 were not divisible, conflicting with
Abernathy v. Fishkin, 638 So.2d 160 (Fla. 5th. Dist. Ct. App. 1994)). None of the cases Marsh
cites addresses payments received under section 1174a. Although each party makes persuasive
arguments, we distinguish the cases Marsh relies on and uphold the trial court's ruling.

 We find Kuzmiak inapposite partly because it addressed separation pay for an
involuntary discharge under section 1174, not a voluntary release under section 1174a. Kuzmiak,
222 Cal. Rptr. at 646. According to Kuzmiak, separation pay is the personal property of the
recipient compensating the member for lost future earnings and designed to ease transition into
civilian life. Retirement pay, on the other hand, is a contractual obligation constituting
compensation for past services. Kuzmiak, 222 Cal. Rptr. at 646. The separation payment in
Kuzmiak did not serve to compensate payment recipients for past services. See In Re Crawford,
884 P.2d 210, 213 (Ariz. Ct. App. 1994). Instead, the payments were given to armed forces
members forced to leave the military to enable them to adjust to civilian life. Kuzmiak, 222 Cal.
Rptr. at 647. Nevertheless, the court recognized the former wife's interest in the unmatured
retirement benefits, including the separation pay, in the event the reenlisted member becomes
eligible for retirement. 

 In an analogous case, the Texas Supreme Court addressed the character of
readjustment payments to a member of the armed forces who was involuntarily released from
active duty. Perez, 587 S.W.2d at 672. As in Kuzmiak, the court reasoned that readjustment
payments to involuntarily severed service members are designed to ease transition into civilian
life, not to serve as compensation for past services. Perez, 587 S.W.2d at 673. While the basis
for these opinions is sound, they do not control our assessment of SSB payments.

 SSB payments are designed to "assist separating personnel and their families," H.R.
Rep. No. 665, 101st Cong., 2d Sess. (1990) (emphasis added). They differ from payments made
upon involuntary severance from the military. In consideration of receiving an SSB payment, one
voluntarily elects to separate from active duty. In the process, the member voluntarily forfeits
the opportunity to earn and receive future retirement benefits that otherwise would become due
upon successful completion of the required service. If one who has accepted an SSB payment
thereafter reenlists in the active reserve and eventually qualifies for retirement after all, the SSB
payment is recouped from the retirement benefits to which the individual becomes entitled.

 In the instant cause, Marsh acknowledges that in consideration for receiving an SSB
payment, he not only separated from active duty, but also agreed to transfer to the armed forces'
ready reserve. Marsh continues to accumulate credit each month toward the eligibility to receive
retirement pay. If he never draws retirement, he can keep the lump sum he received. He also
concedes that if he ever receives retirement pay, the amount of retirement he receives in the future
will be reduced by the amount of the SSB payment he received.

 At least one federal court has observed that SSB payments provide an inducement
for early "retirement." Elzie v. Perez, 841 F. Supp. 439, 440 (D.C. Cir. 1993). By its nature,
an SSB payment resembles a buy-out of the service member's investment in military retirement,
a sort of lump sum settlement, even though the retirement is not yet vested, in order to encourage
the member's voluntary early separation from service. The recipient who reenlists and later
becomes eligible for retirement has in effect received a prepayment on retirement pay because the
retirement benefits are reduced by the amount of the SSB payment. Thus, one can wait to receive
regular retirement benefits or opt out in favor of an SSB payment, but not both. As one court
explained, an "SSB payment [is] either retirement proceeds or a payment in lieu of retirement
benefits." Kulscar v. Kulscar, 896 P.2d 1206, 1208 (Okla. Civ. App. 1995).

 In Blair v. Blair, 894 S.W.2d 958 (Mont. 1995), the Montana Supreme Court also
emphasized that SSB payments are essentially an "advance" on retirement:



Like retirement, [the husband's] eligibility for retirement was based on the number
of years he served in active duty. 10 U.S.C. § 1174a(c). As with retirement pay,
[his] separation pay was calculated according to the number of years he was in
active service. 10 U.S.C. § 1174a(b)(2)(A). [He] could have remained on active
duty for five more years and received retirement pay. Instead, he chose voluntary
separation from the military and received his compensation at an earlier date. For
the reasons we have stated, we characterize separation pay received under the
Special Separation Benefits program (10 U.S.C. § 1174a) as an election for early
retirement.



Id. at 961-62 (emphasis added).

 In sum, at least three other courts called upon to determine whether SSB payments
are retirement benefits have all concluded that they are. See Blair, 894 P.2d 958 (Mont. 1995);
Kulscar, 896 P.2d 1206 (Okla. Civ. App. 1995); Crawford 884 P.2d 210 (Ariz. Ct. App. 1994). 
The SSB payment Marsh received is not compensation for lost future wages but instead
compensation for lost retirement pay earned in the past that he voluntarily gave up receiving in
the future.

 By electing to take an SSB payment, under his interpretation, Marsh would be able
to diminish or completely defeat Wallace's interest in his military retirement benefits. We do not
agree with an analysis which would allow one former spouse to retain all the compensation by
unilaterally altering a retirement plan asset in which the other former spouse has a court-decreed
interest. See Kulscar, 896 P.2d at 1208. Even if Marsh eventually draws retirement, he will
receive a lesser amount at a later date. Id. Therefore, we hold that the trial court did not err in
holding that Marsh's SSB payment was retirement pay in which Wallace was entitled to share
under the divorce decree. We overrule points of error one and two.



CONCLUSION


 Having overruled all of appellant's points of error, we affirm the trial court's order.


 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones 

Affirmed

Filed: June 5, 1996

Publish

1.   The divorce decree provides in pertinent part:


IT IS ORDERED AND DECREED that WANDA MARIA MARSH shall
have judgment against and recover from RICHARD LEE MARSH, if, as,
and when retirement is received by RICHARD LEE MARSH, a monthly
[sum] equal to 29 percent of that monthly amount that a retired 0-3 with 20
years service will receive on the date RICHARD LEE MARSH begins to
receive his retirement, together with the same percentage of any and all cost-of-living related increases to which RICHARD LEE MARSH shall become
entitled for the period beginning on the date of retirement and ending on the
death of RICHARD LEE MARSH. IT IS FURTHER ORDERED AND
DECREED that RICHARD LEE MARSH is designated a constructive trustee
for the benefit of WANDA MARIA MARSH for the purpose of recovering
the retirement, and RICHARD LEE MILLER [sic] is ORDERED and
DECREED to directly pay the resulting product defined above to WANDA
MARIA MARSH within three days after receipt of it by RICHARD LEE
MARSH. All payments made directly to WANDA MARIA MARSH by the
United States Government shall be a credit against this obligation.
2.   10 U.S.C.A. § 1408 (West Supp. 1996).


s or a payment in lieu of retirement
benefits." Kulscar v. Kulscar, 896 P.2d 1206, 1208 (Okla. Civ. App. 1995).

 In Blair v. Blair, 894 S.W.2d 958 (Mont. 1995), the Montana Supreme Court also
emphasized that SSB payments are essentially an "advance" on retirement:



Like retirement, [the husband's] eligibility for retirement was based on the number
of years he served in active duty. 10 U.S.C. § 1174a(c). As with retirement pay,
[his] separation pay was calculated according to the number of years he was in
active service. 10 U.S.C. § 1174a(b)(2)(A). [He] could have remained on active
duty for five more years and received retirement pay. Instead, he chose voluntary
separation from the military and received his compensation at an earlier date. For
the reasons we have stated, we characterize separation pay received under the
Special Separation Benefits program (10 U.S.C. § 1174a) as an election for early
retirement.



Id. at 961-62 (emphasis added).

 In sum, at least three other courts called