710 So.2d 208 (1998)
Dana William WHITE, Husband, Appellant,
v.
Brenda Black WHITE, Wife, Appellee.
No. 97-766.
District Court of Appeal of Florida, First District.
May 5, 1998.
Dana William White, Appellant, pro se.
No brief filed for Appellee.
MICKLE, Judge.
Dana William White, the former husband, challenges certain findings of fact and conclusions of law, as well as several aspects of the equitable distribution of property, made pursuant to a final judgment of dissolution of marriage. We affirm.
The appellant and Brenda Black White, the former wife, were married to each other for the first time in December 1980, were separated around mid-October 1983, and were divorced in Louisiana in January 1985. They remarried in April 1988, were separated in November 1995, and were divorced in *209 January 1997 in Duval County, Florida, in accordance with the terms of the dissolution decree that is the subject of this appeal.

Paternity and Child Support
The former husband's first and second issues challenge the lower court's determinations that he is the father of Danielle Michelle Harrison White and that he should pay child support. The doctrine of equitable estoppel is designed to prevent someone from maintaining inconsistent positions to the detriment of another in cases where paternity is at issue. Marshall v. Marshall, 386 So.2d 11 (Fla. 5th DCA) (despite the parties' agreement that husband was not the biological father, equitable estoppel precluded him from denying legal responsibility for the child's support, where husband had maintained an inconsistent position by signing official governmental papers showing that he was the child's natural father, and the child's position was thereby altered to his detriment), rev. den., 392 So.2d 1377 (Fla. 1980). We find competent substantial evidence in the record to support the trial court's conclusion that the former husband should be equitably estopped from denying paternity of the child and from challenging his legal responsibility for child support. Wade v. Wade, 536 So.2d 1158 (Fla. 1st DCA 1988) (in dissolution action, husband was equitably estopped from denying his paternity of a child born during the marriage but sired by another man, where the child had never been informed that he was not husband's son and where husband had privately and publicly represented the child as his biological son for nine years and had provided full support for the child,). The lower tribunal heard and, significantly, believed evidence 1) that the parties had discussed and planned having a child around the time the child was conceived, 2) that the former wife claimed that the former husband is the child's natural father, and 3) that for a period of many years the former husband treated the child as his own and continued to provide her with financial support. Given the trial court's duty to resolve conflicts in the evidence and to make findings of fact, we decline the appellant's invitation to reevaluate the evidence and to adopt a different view of the facts more favorable to his position. Spradley v. Spradley, 335 So.2d 822, 823 (Fla.1976) (in reviewing trial court's order modifying child custody, district court erred by simply reevaluating facts and reaching conclusions different from trial court's conclusions); Medina v. Medina, 586 So.2d 1346 (Fla. 3d DCA 1991) (appellate court found no abuse of discretion where trial court heard disputed evidence and resolved conflicts in favor of appellee on issue of alimony).

Classification of Involuntary Military Separation Payments
The Florida statute governing equitable distribution of property requires the trial court to "set apart to each spouse that spouse's nonmarital assets and liabilities...." § 61.075(1), Fla. Stat. (1995); Dyer v. Dyer, 658 So.2d 148 (Fla. 4th DCA 1995) (husband's separate property may not be divided under equitable distribution statute for purposes of dividing marital property). In his third issue, the appellant contends that a lump-sum payment received by the former wife upon her involuntary discharge from the United States Navy constitutes "marital assets" subject to equitable distribution under section 61.075, Florida Statutes (1995). Although we have found no dispositive Florida case on this specific question, we are convinced that a number of foreign decisions interpreting the applicable federal statutes governing involuntary separation payments support the trial court's ruling.
The former wife was an officer for approximately eight of her fourteen years of service in the Navy. She was on active duty until February 1996 and earned monthly gross wages of $4,520. Naval officers are subject to an annual fitness evaluation by a selection review board, the outcome of which affects advancement, salary, and benefits. The former husband acknowledges that the former wife's departure from active duty in the armed forces was the result of official military policies under which her nonselection for promotion to the next higher rank for a second time triggered her involuntary discharge from the Navy. 10 U.S.C. §§ 631-632. A California court of appeal has characterized this military scheme as an "`up or out' *210 policy." In re Marriage of Kuzmiak, 176 Cal.App.3d 1152, 222 Cal.Rptr. 644, 645 (1986) (former wife had present community property interest in former husband's nonmatured longevity pension, including $30,000 separation pay that Air Force would withhold from his longevity retirement benefits once he elected to reenlist immediately after involuntary discharge), cert. den., 479 U.S. 885, 107 S.Ct. 276, 93 L.Ed.2d 252 (1986). The former wife was eligible for payment under 10 U.S.C. § 642(a), at an amount calculated according to a formula set forth in 10 U.S.C. § 1174, addressing separation pay upon involuntary discharge. Upon her involuntary separation from active duty, the former wife received a one-time payment of $46,000. She used a substantial portion ($37,130) of this $46,000 to pay off joint marital debts, to make mortgage payments on the marital residence, to take care of repairs to the residence, and to make payments on the parties' time-share condominium. Thus, the real issue here is whether the sum remaining from the separation payout after those expenditures constitutes marital property.
The Florida Legislature has provided that "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement [and] pension ... plans and programs are marital assets subject to equitable distribution." § 61.076(1), Fla. Stat. (1995); Anciaux v. Anciaux, 666 So.2d 577 (Fla. 2d DCA 1996); Cunningham v. Cunningham, 623 So.2d 1243, 1244 (Fla. 1st DCA 1993) ("Clearly, that portion of the husband's future military pension which accrued during the marriage is a marital asset."). On appeal, the former husband contends that involuntary separation pay is analogous to retirement pay 1) because the $46,000 constitutes compensation for past military service or future lost wages and 2) the right to the monies accrued during the former wife's period of active military service. The parties were married during most of her fourteen years in the armed forces. They were already separated when the former wife was involuntarily discharged from the Navy, and the divorce became final less than a year after the discharge. In support of its decision to exclude the involuntary separation payment from marital assets, the trial court cited Baer v. Baer, 657 So.2d 899 (Fla. 1st DCA 1995) (voluntary separation incentive payments from United States Army are not marital assets subject to equitable distribution). Although we conclude that the lower court reached the legally correct result, we note that the decision on which it relied (Baer) is factually distinguishable in that a voluntary election to separate from the armed forces represents materially different circumstances from an involuntary discharge, subject to different statutory provisions with different consequences. In re Marriage of Heupel, 936 P.2d 561, 566 & 570 (Colo.1997) (en banc); Marsh v. Wallace, 924 S.W.2d 423, 426 (Tex.Ct.App.1996); McClure v. McClure, 98 Ohio App.3d 27, 647 N.E.2d 832 (1994).
The legislative history of 10 U.S.C. § 1174, awarding separation pay upon involuntary discharge, refutes the appellant's suggestion that such payments are akin to retirement payments and benefits:
The separation pay is a contingency payment for an officer who is career committed but to whom a full military career may be denied. It is designed to encourage him to pursue his service ambition, knowing that if he is denied a full career under the competitive system, he can count on an adequate readjustment pay to ease his reentry into civilian life.
H.R.Rep. No. 96-1462 at 30 (1980). This type of separation pay is not intended to compensate for past military services. Rather, the one-time payout is designed to assist the service member financially during the transitional period into a civilian livelihood. Compare Kuzmiak, 222 Cal.Rptr. at 646-47 ("We are satisfied that Congress did not intend [involuntary] separation pay to be compensation for past services, and that ... the payment is the separate property of the service member."), with Kelson v. Kelson, 675 So.2d 1370 (Fla.1996) (trial court may enforce settlement agreement or dissolution decree providing for division of military retirement pay against benefits received by service member under voluntary separation incentive program or special separation benefit program, where benefits are "functional *211 equivalent" of retirement pay and are calculated in similar manner).
In Kuzmiak, the payee/former husband reenlisted in the United States Air Force immediately after his involuntary discharge. He began accruing time toward a "longevity pension," to which he would become entitled after twenty years of military service. However, the United States Government would deduct the $30,000 separation pay from Kuzmiak's longevity retirement benefits. Finding that the legislative purposes of involuntary separation pay would not be fulfilled where a service member immediately reenlisted and subsequently received a longevity pension, the California court of appeal found no basis for classifying the separation payout as "separate property." 222 Cal.Rptr. at 647-48. Therefore, the former wife in Kuzmiak was found to have an interest in the service member's nonmatured longevity pension. Id. at 648. Nothing in the instant record on appeal suggests that the former wife has followed the example of the former husband in Kuzmiak so as to require reclassification of the $46,000 payment as marital property. Likewise, the record does not demonstrate that the former wife's involuntary separation from the armed forces was in any way the result of her affirmative effort to deprive the former husband of sums to which he otherwise would be entitled. See In re Marriage of Crawford, 180 Ariz. 324, 327, 884 P.2d 210, 213 (Ct.App.1994) ("An employee spouse cannot defeat the nonemployee spouse's interest in retirement benefits by invoking a condition wholly within his or her control."); In re Marriage of Stenquist, 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96 (1978). Under the present circumstances, we can find no reasonable basis for allowing the appellant to receive a share of the one-time payout intended by the Navy to help the former wife readjust to civilian life and employment. Perez v. Perez, 587 S.W.2d 671 (Tex.1979) (lump-sum readjustment benefits paid to former husband, an Army Reservist, upon his involuntary release from active duty were "an unearned gratuity" intended to enable him to readjust to civilian life and were not "severance payments" for services previously rendered; payment did not constitute community property under Texas law). Thus, we find no error in the trial court's designation of the $46,000 as the former wife's separate nonmarital property.

Remaining Issues
The appellant's fourth, fifth, sixth, and seventh issues are without merit.
Accordingly, the final judgment is AFFIRMED in all respects.
KAHN and DAVIS, JJ., concur.